June 16, 1875. } 　　　　　HEYWOOD *v.* HARTSHORN.

*Indemnity against note lost—Interest.*

The payee of a negotiable promissory note, secured by a mortgage to him of land situate in this state, moved beyond the state, taking with him the note and mortgage, and afterwards died a citizen of another state. *Held*, that his administrator, upon furnishing suitable indemnity to the mortgagor against any claim on account of said note and mortgage by any *bona fide* holder thereof, might maintain a bill in equity to foreclose said mortgage, although the note and mortgage had been lost and could not be found.

An offer by the maker of a promissory note to pay the sum due thereon, upon a reasonable condition which the holder refuses or is not in a situation to fulfil, is sufficient to stop the running of interest.

BILL IN EQUITY, brought by William Heywood of Lancaster, in said county, as administrator of the goods and estate of Nathan Baldwin, late of Stratford in said county, to foreclose a mortgage upon certain lands in said Stratford, given by the defendant to the plaintiff's intes-

tate, August 21, 1862, to secure the payment of the defendant's notes to the said Baldwin, amounting in all to $1,648. The defendant filed his answer, and issue was joined upon a general replication. The cause was tried at the April trial term, 1874, of the late supreme court, before FOSTER, J. The facts alleged in the bill, and admitted or denied in the answer, appear sufficiently in the facts reported as proved on the trial, which were as follows:

On August 21, 1862, the defendant executed and delivered to Nathan Baldwin the notes described in the bill, the same being for the price of the farm described in the bill, and on the same day executed and delivered to said Baldwin a mortgage of the premises for security of the payment of said notes, as alleged in said bill, and the defendant entered into and still remains in possession of the premises. When the first note became due, April 1, 1863, it was paid by the defendant to Baldwin, and taken up. The other notes remain wholly unpaid. In November, 1863, a trustee writ in favor of Matilda Bundy, against said Baldwin as principal defendant and this defendant as trustee, was served upon this defendant, whereby the said Matilda attached the credits of the said Baldwin in the hands of this defendant as trustee, to an amount exceeding this defendant's indebtedness upon said three unpaid notes. This trustee suit was pending in court till the November term, 1866, when it was dismissed on account of the death of Baldwin. Sometime in 1864, Baldwin removed to Ohio, where, until his death in 1865, he resided with Joseph James and wife. When Baldwin went to Ohio, he took with him the three unpaid notes and the mortgage, and they have never been returned to this state. On August 6, 1866, Thyrza B. Hyde, a daughter of said Baldwin, took out letters of administration on said Baldwin's estate in this county, and represented the estate as insolvent, and claims to the amount of $ —— were allowed before a commissioner, including a claim of $52 in favor of the plaintiff. Mrs. Hyde resides in Wisconsin, and did not close the settlement of the estate, and the plaintiff procured her removal and his own appointment as administrator, October 17, 1872. The defendant has at all times been able, ready, and willing to pay the three notes ever since they became due, with interest to the time of their maturity, and is still ready to do so, having at all times either had money sufficient in possession or at ready command. During the pendency of the trustee suit, he kept money on hand all the time, by advice of his counsel, sufficient to pay the amount of the notes. The defendant has repeatedly offered to pay the amount due on all the notes as well to Mrs. Hyde as to the plaintiff since his appointment as administrator, but has declined to pay the same except upon a delivery to him of the notes to be cancelled and a discharge of the mortgage, or a sufficient indemnity against any claim on account of said notes or mortgage; but Mrs. Hyde has declared that she could not produce nor find the notes, and claims that, for some reason not apparent, the sale of the farm to the defendant, as well as the defendant's mortgage deed to her father, were all voidable by her, and that she is entitled, notwithstanding the

deed and mortgage, to the possession of the premises as heir of her father. Mrs. Hyde has offered, as has Mr. Heywood, to give the defendant a receipt for the amount due upon the notes, but both have declined to give him any protection by way of indemnity against the claim of Mrs. Hyde or anybody else upon the premises, though the plaintiff has always been ready, and still is, to discharge the mortgage upon payment of the notes with interest from their date. It did not clearly appear whether the defendant lost any interest money by reason of keeping on hand money enough, during the pendency of the trustee suit, to pay the notes; but otherwise than that, it appears that the defendant usually kept, and still does, all his money out at interest, and that he has not lost the advantage of investments of his money by reason of his liability to pay these notes.

The only questions in controversy are, whether the defendant should be required, in these circumstances, to pay interest beyond the date of the maturity of the notes, and whether the plaintiff should be required to indemnify the defendant against the lawful claim of any other person to have and recover the sum due on said notes and mortgage. The court were of the opinion that the defendant should not be required to pay interest beyond the date of the maturity of the notes, and that the plaintiff should be required to indemnify the defendant as aforesaid. It was therefore ordered, that, upon such indemnity being given and upon payment to the plaintiff of said notes with interest to the date of their maturity, said notes and mortgage be decreed to be cancelled and discharged.

The plaintiff excepted to this decision, and the questions thus raised were transferred to the law term of the late supreme court.

*Fletcher & Heywood,* for the plaintiff.

The notes in question form a contract to pay interest annually upon the amount of the notes, and the defendant can only be relieved from performing that contract except by a tender of performance. The facts, that the defendant, during the time of the pendency of the suit of Miss Bundy against him as the trustee of Baldwin, kept money on hand at all times sufficient to pay the notes due, and has at all times been ready and willing to pay the notes as they fell due, and that he has offered to pay them to Mrs. Hyde and to the plaintiff upon condition they would deliver the notes to him to be cancelled and a discharge of the mortgage, do not make a tender of performance. *Fuller* v. *Little,* 7 N. H. 535; *Sargent* v. *Graham,* 5 N. H. 440.

It is true that, during the pendency of the suit against him as trustee, he could not safely have made a tender of performance to Mr. Baldwin; but, under our statute relating to the trustee process, he could, and, as we claim, should, have paid the money then due into court, and a trustee could then have been appointed to take charge of the fund, and such trustee, under the direction of the court, could have invested the money so that it would have earned interest during the pendency of the suit.

Section 37, chapter 230, General Statutes, provides that the trustee may pay into court the sum for which he is liable, or give bond with sureties to the acceptance of the court for the payment thereof, so far as the same may be required to satisfy the judgment that may be recovered by the plaintiff against the defendant, and the trustee shall be no further liable.

That is the only provision of our statute under which this defendant could escape further liability. This provision is just and equitable towards all parties to the suit, making full provision for the disposition of the fund during the litigation. This defendant should not complain if he is compelled to pay interest during the pendency of that suit, he having failed to take advantage of this provision of the statute, and having held the money himself during that time.

Under this statute, if the defendant would avoid the payment of interest, there is every reason that he should bring it into court, as there is where a party relies upon a tender in any legal proceeding. This is required except in cases where the party to whom the tender is made loses the money by refusal to take it when offered. *Frost* v. *Flanders*, 37 N. H. 549.

The fact, that the defendant could not have safely made a tender to Mr. Baldwin during the pendency of the suit against him as trustee, has no application after the termination of that suit, and the defendant does not here claim but that, after that suit was terminated, he used the money due upon the notes in question; and it seems to us that he should, without question, pay interest subsequent to the termination of that suit. He has had the use of the money and received interest upon it, and why should he not pay interest during that time ?

*Ray & Drew*, for the defendant.

The defendant did not pay the mortgage notes at their maturity, because he had been trusteed for a larger sum in Matilda Bundy's action against Nathan Baldwin. In 1864 said Baldwin moved to Ohio, taking the notes and mortgage with him, and he resided there until he died in 1865. The trustee suit was dismissed, on account of his death, at Coös supreme judicial court, November term, 1866. Mrs. Hyde, his daughter, residing in Wisconsin, was appointed administratrix of the estate August 6, 1866, but, neglecting to settle the estate, she was removed by order of the probate court, and the plaintiff appointed in her place, October 17, 1872 : since then, this action has been begun.

According to equity and good conscience, ought the defendant to pay interest on the mortgage debt since the notes became due ? We contend he ought not, because he was ready and willing to pay them as fast as they matured, and, by advice of counsel, kept money on hand for that purpose all the time the trustee suit was pending. His answer shows that he seasonably made a disclosure therein, fully stating the facts in regard to the three unpaid notes, and admitting his readiness to pay

them as fast as they became due. It was not by reason of the defendant's fault or neglect that he did not pay. After the trustee case was ended, Mrs. Hyde repudiated the bargain whereby her father conveyed the farm to Snow, and Snow to the defendant, the latter giving a mortgage to her father to secure the purchase-money, and claimed the farm itself. Mrs. Hyde and the plaintiff have both declined to give up to the defendant his notes even if he did pay them, or to give him an indemnity against any claim on the part of other persons on account of the notes and mortgage, although the defendant has offered repeatedly to pay, and has always been ready and willing to pay on those conditions. The plaintiff not having the notes and mortgage, and it not being at all certain they were not disposed of by Nathan Baldwin in his lifetime, by gift, sale, or somehow, we insist it is not unreasonable that when the plaintiff pays this debt he should be indemnified against having to pay it a second time. Ordinarily, when notes are paid, they are surrendered to the maker, and the possession of them is *prima facie* evidence of their payment. A receipt for the money would avail nothing against a *bona fide* purchaser of these notes while current. Hence there is a peculiar force and equity in the defendant's claim to be indemnified, inasmuch as the other side cannot return the defendant's paper when they take his money. Interest is not due upon a note after its maturity by virtue of any contract. Ordinarily, if such paper is not paid when due, the court allows interest by way of damages for the detention of the principal, but no contract arises between the parties. Interest is reckoned after the time of payment, because the maker is legally in fault for his neglect to pay at the time he has agreed. In this case the defendant has never been in fault; he has never neglected to pay, without a good and valid excuse for so doing. We ask that the plaintiff's claim for interest since the notes became due be disallowed; and, if required to pay this plaintiff the amount of the notes at the time they became due, that it be only upon some proper indemnity against any *bona fide* purchaser while they were current paper.

SMITH, J. 1. Baldwin's domicile, at the time of his decease, appears to have been in Ohio. Administration upon his estate here is ancillary to administration granted in that state, and is necessary for the collection of these notes or the foreclosure of this mortgage. If the notes were never lawfully transferred by Baldwin in his lifetime, the defendant Hartshorn can only be compelled to pay them to an administrator appointed in this state; and payment by him to an administrator appointed in Ohio would be no protection to him against a suit for their collection by an administrator appointed here. *Willard* v. *Hammond*, 21 N. H. 382; *Clark* v. *Clement*, 33 N. H. 563.

After the first note had become due and was paid, and before the others became due, Baldwin removed to Ohio, taking with him the notes and mortgage, and died without having called upon Hartshorn for payment. Whether he gave them to his daughter, Mrs. James, does

not appear. This he could not do in fraud of his creditors. There is no evidence in the case that he sold them to any one; that his daughter, Mrs. Hyde, the first administratrix on his estate, made no effort to collect them, is evidence that they may have been transferred prior to his decease; but that no one has appeared in this state claiming to own them, or attempting to collect them, although nearly ten years have elapsed since his death, furnishes a strong presumption that they were not transferred by him in his lifetime. But, nevertheless, it is not altogether impossible that they may have been transferred, and that before they shall become barred by the statute of limitations, some one may appear and attempt their collection or the foreclosure of the mortgage. It will therefore only be just that the plaintiff should indemnify the defendant against any claim on account of these notes and mortgage by any *bona fide* holder. Such has generally been the practice of the courts in this state when the note or instrument, which is the foundation of the suit, has been lost; and *Hill* v. *Barney,* 18 N. H. 610, is an authority directly in point. If the person who now holds or claims to own these notes were known, he might be made a party to this suit, and, upon failure to sustain his claim to them, be compelled to surrender them up to the plaintiff. But in the absence of such a party, it would seem to be no more than reasonable that the plaintiff, before he shall be permitted to recover, should fully indemnify the defendant against any claim on account thereof by any *bona fide* holder. Whether the plaintiff in turn would not be entitled to indemnity from the heirs and creditors before he shall be decreed to pay to them the amount so collected upon these notes, is a question that is not now before us.

2. The defendant claims that he should not be decreed to pay interest upon these notes since their maturity, upon the ground that he has been ready and has offered to pay them, and that it was not through his fault that they were not paid; and I think the ruling of the court below in this respect was substantially correct. The case of *Suffolk Bank* v. *Worcester Bank,* 5 Pick. 106, is very much in point. The plaintiff bank presented to the defendant bank its bills, and demanded the specie, which the defendants could not pay, but on the next day tendered to the plaintiffs the requisite sum in specie, with interest at the rate of twenty-four per cent. per annum (the rate prescribed by statute in case of neglect of a bank to redeem its bills upon presentation therefor). The plaintiffs refused to accept the sum tendered, and the defendants deposited the money in a bank in Boston, for the use of the plaintiffs, with notice that they might at any time draw it out. It was held that the plaintiffs could recover neither the statute penalty of twenty-four per cent. per annum after the tender, nor even simple interest. PARKER, C. J., remarked,—" The tender, though not technically good as a defence, is a legal and equitable shield against the just but severe penalty for neglecting and refusing to redeem their bills, from the time when they would have redeemed them but for the refusal of the other party to receive."

In 3 Starkie's Ev. 1396, it is laid down, that " although a tender of the sum due is not evidence under the general issue in assumpsit or debt, yet a tender of a sum due on a promissory note, accompanied with a demand of the note, is sufficient to stop the running of interest."

*Dent* v. *Dunn*, 3 Campb. 296, was an action brought by Dent against the executrix of Dunn on two promissory notes given by the testator in his lifetime. It appeared that after his death his executrix had given her agent a sum sufficient to take up the notes. The agent offered to pay the principal and interest on having the notes delivered to him; but they were mislaid, and so the money was not paid. The agent failed with the money in his hands. Afterwards the notes were found and the action brought. These facts were relied upon in defence of the action, but not admitted as such. A question then arose to what time interest should be made up. Lord ELLENBOROUGH said he thought interest ought to be stopped from the time of the offer to pay. Interest, he said, is a compensation agreed to be paid for the use of money forborne by the lender at the borrower's request. It is more frequently recovered in the shape of damages for money improperly detained by the debtor contrary to the request of the creditor. But in neither of these ways can it run after an offer to pay the principal, upon a reasonable condition which the party to receive refuses or is not in a situation to fulfil. A verdict was taken for the principal, and interest down to the tender. Here, it will be observed, was no legal tender. The offer to pay was after the notes had become due, and a condition was insisted on, which, however reasonable, would have rendered the offer nugatory as a tender; but yet it had its effect, because the money was not unlawfully detained, for it was the neglect of the plaintiff in regard to the notes which prevented the payment;—see, also, *Zeevin* v. *Cowell*, 2 Taunt. 203, and *Roberts* v. *Lambert*, 2 *ib*. 284.

In *Goff* v. *Rehoboth*, 2 Cush. 475, the plaintiff presented his account to the selectmen, who drew an order in his favor and left it with the town treasurer for $24.67, the amount which they allowed, and the plaintiff was notified of it by the treasurer. The plaintiff failed to recover more than the selectmen allowed. It was held, (1) that there was no such demand for payment as would lay the foundation for a claim of interest; and (2) that the notice given by the treasurer to the plaintiff, that $24.67, being the whole amount of his bill then demanded except the contested claim on which the defendants prevailed, though not a technical tender, was such an offer as to prevent the accruing of interest by way of damages.

In *Otis* v. *Barton*, 10 N. H. 433, it was held that " if the maker of a note payable at a given time and place be then and there ready with the means of payment, such readiness will be equivalent to a tender," and that the plaintiff could recover no interest after maturity.

A tender, with a request that a deed be executed to which the party is entitled on making the tender, or with a request that the note of the party making it be given up, is not a conditional tender. *Buffum* v. *Buffum*, 11 N. H. 451.

The case before us finds that the defendant has been able, ready, and willing to pay these notes ever since they became due, with interest to the time of their maturity, having at all times either had money sufficient in possession or at ready command, and that he has repeatedly offered to pay the amount due on all the notes to Mrs. Hyde, the former administratrix, and to the plaintiff, the present administrator, upon delivery to him of the notes to be cancelled and a discharge of the mortgage, or a sufficient indemnity against any claim on account of said notes and mortgage. That the plaintiff could not surrender the notes and mortgage, if not the fault of his intestate, is the misfortune of the plaintiff, for which the defendant should not be made to suffer. Although these offers were not, strictly speaking, a lawful tender, yet I think, upon the strength of the above authorities, that they were sufficient to relieve him from the payment of interest subsequent to the appointment of Mrs. Hyde as administratrix, August 6, 1866.

The defendant has offered in his answer to pay the money, but it does not appear that he has brought it into court. *Frost* v. *Flanders*, 37 N. H. 549. The plaintiff, however, has taken no exception on this point. The case finds his readiness to pay, and he can be permitted now to bring the money into court—*Buffum* v. *Buffum, supra*, 459— to be paid to the plaintiff upon his indemnifying the defendant against any claim on account of these notes.

CUSHING, C. J., and LADD, J., concurred.

*Exceptions overruled.*