WESTERN UNION TELEGRAPH CO. *v.* STATE.

A telegraph company is liable for interest at ten per cent. on the amount of the tax finally levied upon them, from December 1 of the year in which it is assessed, although the amount of the original assessment has been reduced on appeal.

APPEAL from assessment of the plaintiffs' tax for 1884, made by the board of equalization. At the June term, 1885, the amount of the original valuation, upon a further report of the board of equalization, was reduced from $250,000 to $150,000. The attorney-general moved that interest at the rate of ten per cent. from December 1, 1884, be added to the amount of the plaintiffs' tax as finally fixed.

*The Attorney-General,* for the state.

*Chase & Streeter,* for the plaintiffs. I. The following facts are involved: 1. The valuation of the plaintiffs' property, made by the board of equalization from 1879 to 1883 inclusive, was from $51,442 to $61,579. The tax assessed during the same years was from $514.42 to $761.53. In September, 1884, the board fixed the valuation at $250,000, and assessed a tax of $3,090.75. This was done without notice to the company (except the general annual notice), and without suspicion by the company that such an act was contemplated. The plaintiffs immediately appealed to the court under the statute, and diligently prosecuted their appeal. The appeal was referred to the board of equalization. Long hearings were had, and the board once reported the valuation at $175,000. This was manifestly wrong, and at our suggestion the report was sent back for the correction of errors. In the meantime we had appealed from the board's assessment for the year 1885, which appeal was also sent back to the board. In June,

1886, the board made a report fixing the valuation for each of the two years at $150,000, and assessed a tax for the year 1884 at $1,855.05, and for the year 1885 at $1,743.

2. The plaintiffs were ready to pay their just tax for each year before November 1, as directed by statute, and held themselves in readiness to pay the same as soon thereafter as the amount should be determined by the state. They asked for and desired no delay in making such payment.

3. The delay was not occasioned by the neglect or fault of the plaintiffs, but solely by the fact that the state, upon its own motion, hastily, and without giving the plaintiffs notice of a hearing (except the general notice), appraised the plaintiffs' property $100,000 in excess of its actual value, thereby necessitating a hearing for the correction of errors.

4. The practice of the state has been uniform in neither demanding nor receiving interest on overdue state taxes, except in cases where the statute demands interest as a penalty, and this, notwithstanding the default, may have arisen from the wilful neglect of the tax-payer. When extents have been issued for overdue state taxes, the amount called for by the extent has uniformly been the original assessment without interest. Since December 1, 1884 (when it is claimed that interest on the plaintiffs' tax of 1884 began to run), delinquent taxes in considerable sums have been paid into the treasury, but no interest has been demanded or paid.

5. No interest on taxes has ever been demanded by or paid to the state when the delay was occasioned by a pending appeal for the ascertainment of the true amount of the tax. This practice is ratified and confirmed by statute.

The form of the attorney-general's motion gave us no opportunity of bringing the above facts regularly before the court. We are prepared to make proof thereof in such manner as the court may suggest.

II. The statute (G. L., c. 62, s. 9) authorizes the court, in this case, "to make such orders as justice may require." Taking into account the letter and the spirit of the statute, we affirm that justice does not require, but forbids, the granting of the motion. Our reasons are,—

1. To make such an order would be, in effect, the enactment of a penal statute by the court in relation to the collection of taxes.

2. It would impose on the plaintiffs a penalty for not doing an act which by law and universal practice in this state they were not bound to do, and which it was impossible for them to do.

3. It would impose on the plaintiffs, as tax-payers, more than their fair proportion of the public burden.

Upon the first proposition, we suggest,—

III. Taxes do not bear interest except when expressly so provided by statute. 1 Desty Tax. 9. A tax is not a debt or contract,

and does not bear interest. *Perry* v. *Washburn*, 20 Cal. 318–350; *Haskell* v. *Bartlett*, 34 Cal. 281; *Lane Co.* v. *Oregon*, 7 Wall. 80. The state cannot recover interest on taxes, payment of which has been deferred, unless the statute authorizes interest on such taxes. *W. U. Tel. Co.* v. *State*, 55 Texas 314. Where an action is given for taxes, interest is not recoverable unless the statute gives it. *Danforth* v. *Williams*, 9 Mass 324 "A tax never carries interest. No instance, it is believed, can be found, since the formation of the government, where a claim for interest on taxes has been made or enforced." *Green*, C. J., in *Camden* v. *Allen*, 26 N. J. 398;—see *Shaw* v. *Peckett*, 26 Vt. 485. Taxes are not debts so as to bear interest as liquidated demands. *State* v. *R. R. Co.*, 70 Ga. 11.

In an action against a corporation for a failure (to pay taxes), no interest should be allowed as damages: the statute prescribes the penalty for default in payment, and no other may be required. *People* v. *Gold and Stock Tel. Co.*, 98 N. Y. 67. In the last case the court say,—"The state at pleasure created the charge or tax, and prescribed the penalty for default in payment. No other can be collected. . . . Interest is not given either by this act or by any general law of the state. The payment of it cannot be imposed by implication. What the state omitted to demand, the court cannot require." To the same effect, see Hill. Law of Tax. 444, and cases cited. In *Counties* v. *Railroad Co.*, 65 Ala. 391, the court say,—"Without entering at this time into a discussion of the question, we decline to award interest on these back taxes. The uniform custom in this state, so far as our information extends, has been not to demand interest as interest on taxes in default, and we will not disturb that custom." A judgment for taxes cannot include interest in the absence of statute or ordinance. *Edmonson* v. *City of Galveston*, 53 Texas 157; *People* v. *Thatcher*, 95 Ill. 109.

Statutes imposing interest on delinquent tax-payers (as our *s.* 9, *c.* 57, *s.* 6, *c.* 62, *s.* 8, *c.* 56, Gen. Laws, which impose a 10 per cent. penalty) are sustained on the ground that the interest imposed is in the nature of a penalty for non-payment of the tax within the time directed by statute. 2 Desty Tax. 764, and cases cited. And all the foregoing cases are authority to the effect that the imposition of such a penalty is exclusively within the province of the legislature, and not within the lawful power and authority of the court. The penalty of interest cannot be considered a part of the tax (2 Desty Tax. 764), and an act which provides that a penalty (of 10 per cent. interest) shall attach to and become a part of a delinquent tax is void. *Ryan* v. *State*, 5 Neb. 276. In the last case the court say,—"Now it is said that 'penalties may be prescribed [meaning by the legislature] for future delinquencies in the payment of taxes, as part of the machinery by which government is able to collect them;' but such penalty is not taxa-

tion, and cannot be sustained as a tax or any part of the revenues raised by taxation."

Whence does the court derive power to prescribe penalties and to punish the plaintiffs in this case? Is it implied in the phrase " to make such orders as justice may require "? We do not think the legislature intended such a construction. We do not believe the legislature intended to delegate their constitutional power of imposing " fines, mulcts, imprisonments, and other punishments; " or their other constitutional power of establishing " all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions, either with penalties or without," to the judiciary,—nor that such a delegation of power, if intended, can be sustained. *Delegatus non potest delegare* is an apt maxim. But, if the court hold that under the statute they have power to impose the penalty called for by the motion, for what act of the plaintiffs, done or omitted, are they to be punished? What statute have the plaintiffs violated? What ought the plaintiffs to have done (under the circumstances of this case) which they have not done? We submit that these inquiries cannot be so answered as to lead to the conclusion that justice requires these plaintiffs to be set apart from other state tax-payers for judicial punishment. Justice does not require that the court, in disposing of this motion, should make an order which practically puts a new law upon the statute book, and which will overturn the uniform practice of the state since its organization.

IV. Such an order would impose on the plaintiffs a penalty for not doing an act which by law and universal practice in this state they were not bound to do, and which it was impossible for them to do. The plaintiffs were not bound to pay their state taxes until the amount had been lawfully ascertained. A tax is a charge made by the state upon persons resident and owning property therein. All the machinery for determining the amount of the tax properly chargeable to the plaintiffs was in the control of the state. The error in the original assessment was occasioned by the negligence of the state's taxing agents. Acting hastily, without proper investigation and without notice (except as above stated), they more than quadrupled the appraisal of the plaintiffs' property, and the tax as assessed the year before. The appraisal thus made was very greatly in excess of the " actual value " of the property, and the tax assessed was illegal because entirely disproportional. This error of the state cannot be charged to the fault of the plaintiffs, and the plaintiffs ought not to be punished therefor. The statute upon which these assessments were based does not call for or contemplate payment until the tax is properly assessed.

Under the cirumstances, what was the plaintiffs' duty in October, 1884? Was it to pay into the state treasury $3,090.75, a sum $1,200 more than their proportion of the public burden, upon the assumption that they might draw back $1,200 with interest after the

state had corrected its manifest errors, and made a legal assessment on "actual values," as by law it was bound to do in the first instance? This, in effect, would compel the plaintiffs to loan the state $1,200 for nearly two years.

The board, without notice, multiplied the tax of 1883 by four. Suppose they had multiplied it by one hundred: it would have been more unreasonable than what they did do only in degree. The result then would have been an appraisal of about $6,100,000, and an assessed tax of about $76,100; while the actual value would be $150,000, and the assessment about $1,800. Is there any principle of justice that would require the plaintiffs to pay into the treasury the $76,100, thereby loaning a large sum to the state, pending the correction of its own errors by the state itself?

Was it the plaintiffs' duty to guess at the amount which the state, after two years, might fix as the "actual value" of the property, and pay the amount so guessed into the state treasury? Obviously not, for the reason that it is exclusively the duty of the state to determine and fix said "actual value;" and no tax assessed upon other than the "actual value" is a legal charge upon any tax-payer. Taxes legally assessed are a proper charge against the tax-payer: taxes illegally assessed impose no obligation upon him. The tax assessed in September, 1884, was just as illegal, invalid, and unconstitutional as would have been a tax of two per cent. on the gross receipts of the plaintiffs, assessed arbitrarily at the pleasure of the board of equalization. The tax was unauthorized, and therefore not due or payable. Tax-payers ought not to be punished or mulcted in damages for declining to pay taxes of that character. "Justice" does not demand such a conclusion.

V. The granting of the motion would impose upon the plaintiffs, as tax-payers, more than their fair share of the public burden. The facts stated at the beginning of this brief are conclusive upon this proposition.

BINGHAM, J. Section 14, Gen. Laws, c. 62, as amended by s. 2, c. 53, Laws of 1881, requires that every telegraph corporation shall pay an annual tax on the valuation of their property as near as may be in proportion to the taxation of other property throughout the state; and it is made the duty of the state board of equalization to assess the same at the average rate of taxation of other property. Section three of the last named act requires the assessment to be made and certified to the state treasurer by the thirtieth day of September, that the tax shall be paid on or before the thirtieth day of October, and that all property of the corporation, on the first day of April preceding, shall be liable for its payment. The effect of these provisions is to subject telegraph corporations to the same taxation that other owners of property are required to pay.

Section 9, c. 57, Gen. Laws, provides that "Interest at ten per

cent. shall be charged upon all taxes not paid on or before the first day of December, after their assessment, from that date, which shall be collected with said taxes as incident thereto." The plaintiffs' taxes for the years 1884 and 1885 were seasonably assessed, and duly certified to the state treasurer. Under the provisions of *s.* 9, *c.* 61, Gen. Laws, the plaintiffs appealed from the assessment to this court, whose duty it is to make such orders as justice requires. On the appeal it has been adjudicated that the assessment and tax in each of the years was too large by two fifths, and the same was reduced to three fifths at the June term, 1886. The plaintiffs have not paid or offered to pay any part of either tax; and the question is whether they should be required to pay interest under *s.* 9, *c.* 57, Gen. Laws, which requires that interest shall be charged and collected on all taxes not paid on or before the first day of December after their assessment, as incident to said taxes. This statute makes the interest a part of the tax to be collected. It would be unjust to require the plaintiffs to pay interest on the two fifths that are abated and disallowed. But the plaintiffs claim that they should not be required to pay any interest, as the final determination of their assessment was not made till June, 1886, and none could accrue under the statute till the December after; but we think that when the state board of equalization made their assessment and certified it to the state treasurer, they made the assessment required by the statute, and that it was not the intention of the legislature to give the plaintiffs the use of the money justly due the state on or before December 1, 1884 and 1885, one and two years' interest as a compensation for taking the appeal. All other tax-payers either paid their taxes on or before the first of December of these years, or became liable to pay interest thereafter till they did pay them, and justice requires that the plaintiffs should pay interest on their just and equal portion of the public burden due the state on or before the first of December in each of these years. Had the plaintiffs tendered or offered to pay, when due, the sum afterwards found to be their proportional share, and the state had declined or neglected to take the same, a different case would be presented. *Heyward* v. *Hartshorn*, 55 N. H. 476, 483; *Thompson* v. *Railroad*, 58 N. H. 524. A tax-payer, appealing from an excessive assessment, may be unable to determine the exact amount which will be found by the appellate court to be his share of the public expense. He may be unable to protect himself against the interest that will accrue after the first of December by paying the exact amount of his tax debt before it is ascertained. But this is not a reason for giving him an exemption that is not enjoyed by his neighbors who do not appeal. In an action of contract or tort, the defendant is frequently unable to protect himself against interest and costs by paying into court the exact amount of damages before they are assessed. The amount he will pay for the purpose of protection

is left to his judgment.    The appealing tax-payer can protect him-self against interest by paying enough of the amount assessed, and afterwards recovering any excess that may be abated.

It is said, however, that if the plaintiffs had paid the taxes as first certified, they would have been remediless as to the two fifths abated on the appeal.    It is true that the state cannot be sued without its consent, but in the proceedings for abatement provided for in s. 9, c. 61, Gen. Laws, under which the plaintiffs take this appeal, the state voluntarily makes itself the party defendant, subject like other parties " to all such orders as to costs and se-curity for costs, and upon all other matters, as justice may require." This gave authority for any order that justice might require for the satisfaction of any judgment of abatement that the plaintiffs should recover in the case.    Edes v. Boardman, 58 N. H. 580, 585, 586.

The plaintiffs are charged with interest on the sum found due, on the appeal of each year from the December after the assess-ment was made by the board of equalization, at the rate of ten per cent.

                                                    *Case discharged.*

All concurred.