## WASHINGTON WATER POWER CO. v. KOOTENAI COUNTY et al.

(Circuit Court of Appeals, Ninth Circuit.   February 1, 1921.   Rehearing Denied March 9, 1921.)

No. 3546.

**1. Taxation ☞375(1)—Adoption of valuation by Utilities Commission for assessment held proper.**

A valuation made by the Idaho Public Utilities Commission of a power company's property under Comp. St. Idaho 1919, §§ 2471, 2514, after considering all elements of value, may be adopted by the state board of equalization as the full cash value of the property for taxation under the Idaho Revenue Law (Comp. St. Idaho 1919, §§ 3097, 3104, 3110), though the valuation was made by the Utilities Commission for the purpose of fixing rates.

**2. Taxation ☞42(2)—Fact that all utilities properties were assessed alike does not defeat recovery for overvaluation.**

That all property of public utilities in the state was assessed at 75 per cent. of its full cash value does not defeat the right of a power company to have its taxes reduced, if property of other classes within the state was assessed at only 50 per cent. of its cash value.

**3. Taxation ☞40(8)—Owner assessed at 75 per cent. of value not liable for full amount, if others were assessed at 50 per cent.**

Under Const. Idaho, art. 7, §§ 2, 5, requiring all taxes to be uniform, a public utility corporation, whose property was assessed at 75 per cent. of its full cash value by the state board of equalization, under Comp. St. Idaho 1919, § 3171, is entitled to relief against a portion of the taxes thereby levied, under the Idaho Revenue Law (Comp. St. Idaho 1919, § 3183), where other property assessed by the county assessors under section 3110, and equalized by the state board of equalization under sections 3172, 3175, 3183, was assessed at only 50 per cent. of the cash value, notwithstanding the requirement of sections 3097, 3104, that all property in the state be assessed at its full cash value.

**4. Taxation ☞840—Taxpayer liable for total penalty, if tender is insufficient.**

A taxpayer, who objected to the payment of the tax on the ground of unequal assessment, and who tendered the amount he admitted to be due, is liable for all the penalties on the amount due under Laws Idaho 1915, c. 69, § 1, amending Laws 1913, c. 58, § 113, if the tender was insufficient to cover the amount of the taxes lawfully assessed.

**5. Taxation ☞840—Taxpayer not liable for penalties after sufficient tender.**

Where the taxpayer protested against a portion of the taxes because of unequal assessment against it, and made a tender sufficient to cover the taxes which should have been paid if the board of equalization had valued its property on the same ratio as other property, no penalty is recoverable for nonpayment of the taxes.

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Washington Water Power Company against Kootenai County and others. From a decree granting part of the relief claimed, plaintiff appeals. Reversed and remanded.

The Power Company, an electric power corporation, appellant, sued Kootenai county and certain of its officials for a determination of taxes due upon the property of the company for the year 1918, and that the county be re-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quired to accept the sum paid for taxes, and that all taxes in excess of 55 per cent. of the tax levied be declared void and that all penalties be declared null.

The plaintiff alleges that the Idaho state board of equalization assessed the property of the plaintiff for 1918 at $2,750,000, which was in excess of the full cash value of the property at that time; that before the assessment the company filed with the state board of equalization full reports disclosing the property, its value, income, and operating expenses; that at the meeting of the state board of equalization at which the assessment was to be made the company, by counsel, called attention to the value of its property and to an opinion of the Public Utilities Commission of Idaho which had valued the property of the company in Idaho for rate-making purposes as of December 31, 1917, which was just prior to the time when the board of equalization was charged with the duty of assessing property; that the judgment of the Public Utilities Commission showed the value of the property of the company in Idaho to be not in excess of $2,438,978. It is also alleged that plaintiff owned a distribution system in St. Maries, Idaho, which had not been valued by the Utilities Commission, and the actual value of which was $31,461; that the attention of the board of equalization was called to the fact that the assessors in Idaho, charged with the duty of assessing all property except that of public utilities, were not assessing in excess of 50 per cent. of full cash value, and that the Power Company demanded assessment upon the same basis and by the same rule; that the total value of the operating property of the company in Idaho on the second Monday in January, 1918, did not exceed $2,470,430, and reproduction cost not in excess of $3,384,413. It is charged that the county assessors in Idaho and the county boards of equalization generally and intentionally assessed property at not to exceed 50 per cent. of its full cash value, and that such assessments were made as the result of an understanding between assessors and the state board of equalization; that this rule prevailed in Kootenai county, but that the assessment made by the state board of equalization imposed upon the company in Kootenai county an unjust and undue burden, and the state board of equalization did not assess the property at 50 per cent. of its full cash value, but at 100 per cent. thereof and more; that knowledge of the understanding that assessments should not exceed 50 per cent. of its full cash value was within the knowledge of the members of the state board of equalization, and that the defendant county, through its officers, proceeded to collect taxes upon the 100 per cent. valuation assessed by the state board of equalization on the property of the company. It is set forth that tender and refusal of 55 per cent. of the taxes assessed were had, and that the county officers issued a delinquency certificate, whereby a 6 per cent. penalty and an additional penalty of 1 per cent. per month is claimed. The answer denied the allegations of the complaint.

After hearing, the court decreed that the company owed the county a balance of $12,431.20, $23,080.84 having theretofore been paid, and that, of the sum of $12,431.20, $10,049.32 was the balance of taxes due, and $2,381.88 was penalty and interest, and that upon payment of such sum to the county, with interest from the date of decree, satisfaction of record should be entered by the county officials, and injunction should issue against the county officials from selling the property of the company on account of taxes for the year 1918, and the certificate of sale for taxes for 1918 should be canceled. Appeal from the decree was taken.

The corporation was under obligation to pay a tax in proportion to the value of its property (Const. Idaho, art. 7, § 2) and all taxes levied must be uniform upon the same class of subjects within the territorial limits of the authority levying the tax (Const. art. 7, §§ 2 and 5). The statutes which are material are as follows: By section 2471, Idaho Comp. Stat. 1919, the Public Utilities Commission of the state shall have power to ascertain the value of the property of every public utility "and every fact which, in its judgment, may or does have any bearing on such value." For the purpose of ascertaining the matters specified in section 2471 concerning the value, the Commission may have a hearing at which the public utility affected shall

be entitled to be heard, and shall make and file its findings of fact in writing upon all matters concerning which evidence shall have been introduced, and which have bearing on the value of the property of the public utility affected. Section 2514. The findings of the Commission so made and filed shall be admissible in evidence in any action or proceeding before the Commission, or any court in which the Commission, the state, or any officers of any body politic and the public utility affected may be interested, whether arising under the provisions of the chapter of which section 2514 is part, or otherwise, and such findings shall be prima facie evidence of the facts therein stated as to the facts therein stated under conditions then existing, and such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined.

By section 3097 of the revenue laws, all real and personal property subject to assessment and taxation must be assessed at its full cash value for taxation as of the second Monday in January. By section 3104 it is provided: "By the term 'value,' 'cash value' or 'full cash value' is meant the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power when put to the same uses to which property similarly situated is applied. Section 3110 provides that in ascertaining the value of any property the assessor of the county shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion any value or price for which the property would sell at auction or at forced sale, or in the aggregate with all the property in the taxing district; nor shall he adopt a speculative valuation, but he shall value each article or piece of property by itself and at such sum or price as he believes same to be fairly worth in money at the time such assessment is made.

The state board of equalization equalizes the assessment of property throughout the state by classes, as shown by abstracts submitted. Section 3171. In equalizing the board has power to increase the total value of any class of property in any county as shown by the abstract, when in the opinion of the board the value of that class is not just and equal as compared with the value of other classes of property in that county, or the value of property in other counties, because of its being less than the full cash value as determined by such comparisons; and the board may decrease the total value of any class of property in any county as shown by the abstracts when in the opinion of the board the value of that class appearing in such abstract is not just and equal, as compared with the value of other classes of property in that county, or the value of property in other counties, because of its being in excess of the full cash value as determined by such comparison. The board of equalization may add to or deduct from the aggregate value of all property in any county as shown by the abstract, such percentage of such aggregate values as in the opinion of the board may be necessary to establish uniformity and equality of value among the several counties in the state. Section 3172. Section 3175 provides that the valuation of all property which, according to the provisions of the chapter of which section 3175 is a part, shall be exclusively assessed for taxation by the state board of equalization and shall be equalized in relation to the valuation of other property in the state according to its full cash value. Section 3183 provides that the operating property of electric current transmission lines and the franchises of persons owning or operating as lessees electric current transmission lines, wholly or partly in Idaho, shall be assessed for taxes exclusively by the state board of equalization. The board of equalization shall ascertain and determine the full cash value of the lines in each county separately and shall determine the total value, total number of miles, and value per mile of each electric current transmission line in each county into or through which the line extends and the value per mile and number of miles of such line in any incorporated city, town, or taxing district into or through which the line extends. The value per mile of electric current transmission lines is to be determined by dividing the total value of such lines within each county by the number of miles of such line within each

county, and all operating property of such line shall be assessed as of and apportioned to the county in which the same is situated as a part of the transmission line in said county.

John P. Gray and W. F. McNaughton, both of Cœur d'Alene, Idaho, and F. T. Post, of Spokane, Wash., for appellant.

Bert A. Reed, C. H. Potts and N. D. Wernette, all of Cœur d'Alene, Idaho, for appellees.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The District Judge expressed the opinion that the evidence was not sufficient to sustain the contention that the property of the company was overvalued, while all other property was undervalued, and he held that the board of equalization had adopted the findings of the Public Utilities Commission of the state which had determined that the value of appellant's property was $3,587,500, to which sum the court added the valuation of the St. Maries lighting system, estimated at $33,000, making a total of $3,620,500. It was also the opinion of the learned judge that the state board of equalization intended to make the assessment on the basis of 75 per cent. of the actual cash value of the property, although the evidence demonstrated that most of the other property in the state was assessed at not to exceed 50 per cent. of the actual cash value, and that generally that standard was recognized in making the assessments of property. But the court held, however, that it had not been established that the board of equalization valued any of the public utilities at 50 per cent. and that the presumption was that it put all public utilities upon an equal footing and on the 75 per cent. basis. The way of consideration by the court was as follows:

The total assessed valuation of Kootenai county for 1918 was taken at $18,396,436, of which sum $11,595,837 was assessed by the local assessor, and the balance, $6,800,599, was found as the valuation put upon public utilities by the state board of equalization. From the assessment of $11,595,837 the court substracted the assessments improperly made under the 50 per cent. value upon bank stock, $129,500, and, after adding this sum to the assessment on public utilities, found that, including appellant's property, the total valuation of $6,930,099 was on a 75 per cent. basis for all public utilities, and $11,466,337 was upon a 50 per cent. basis upon property other than public utilities. In conclusion the court said:

"As against the other property in the first class, plainly the plaintiff's property is entitled to no relief. But, as against the second class, equality of treament requires a 33⅓ per cent. reduction."

The ratio of the two classes was found to be approximately 7 to 12, and the plaintiff was held to be entitled to a reduction of 33⅓ per cent. upon twelve nineteenths of its assessment, or a total reduction of $8,835. In objection to the decree appellant's contention is that the court erred in holding that the value of the property of the appellant subject to taxation was greater than $2,438,978, and in holding that the state board of equalization found that the total actual value of the operating property was $3,620,500.

[1] We do not think it necessary to extend our opinion with excerpts from the voluminous evidence introduced before the trial court. There were elaborate tax statements, coupled with the evidence of reports of public utilities, their operation costs, percentages earned, production costs, depreciation, value, and many other features relating to valuations and elements in arriving at actual values, whether for rate or general purposes. It also appeared that, at the hearing before the board of equalization of the state, counsel for the Water Company and the state, respectively, made arguments. When the matter was before the board of equalization, that body heard evidence of witnesses as to valuation; but it does not appear that any extended independent investigation into valuations was made. We gather that the board accepted as a basis of assessment the findings of the Public Utilities Commission. These were contained in an exhaustive report (which is in the record in this case), and as the Water Company urged the board of equalization to adopt and follow the determination of the values made by the Public Utilities Commission, it ought not to feel aggrieved at results based upon the acceptance of the conclusion of that Commission.

It is true that the finding of the Public Utilities Commission was primarily to arrive at a valuation for the purpose of rate-making and not taxation, and that when that body determined that as of December 31, 1917, the value of the used and usable property of the Power Company used in delivering electrical energy in Idaho, the Commission had in mind the fixing of a reasonable rate for service. But, as we have indicated, it is also true that in arriving at the valuation for such purpose the Commission considered many other elements bearing directly upon the question of actual value and really considered actual value. The evidence shows that they referred to the books and records of the company, which were audited by the accountant force of the Commission, considered depreciation, capital and stores account, development cost, going concern value, values of property which had not been used and which probably never would be used in the operation of the light and power property, earnings, land values, and what would be fair apportionments of value of tangible and intangible property. After consideration of these and other elements, including inventories and revenue statements and "all the evidence, facts, and circumstances surrounding the case," a value of $3,800,000 was unanimously determined upon by the commissioners.

The findings of the District Court was that the Public Utilities Commission determined that the ultimate conclusion of the present worth of the property of appellant was based not exclusively upon any one of several methods more or less commonly employed for reaching the value of properties such as public utilities, and that the theory of reproduction cost, in so far as it was used, was not applied without making allowance for depreciation and that other compensating considerations were recognized by the Commission and that on the whole the decision of the Commission was so clear that the board of equalization must have understood and did understand that the value of the property subject to taxation was $3,587,500. In this connection it

is said that the District Court erred in not taking depreciation into consideration, but when we examine the very careful report of the Public Utilities Commission, which was the basis used by the board of equalization, we find that the Commission did consider depreciation and made detailed estimate of the cost of reproduction, less depreciation of all property used and usable in the business on December 31, 1917, first, based upon the unit prices for five years preceding June 30, 1915, and, second, based upon unit prices for five years preceding December 31, 1916. Furthermore, in their findings of the total value of $20,500,000 and apportionment as between the states of Washington and Idaho, the Public Utilities Commission considered various theories of apportionment, and found that under one the value was $3,587,500 for the Idaho properties, and said:

"We shall not attempt to fix any separate and distinct value for each of the elements herein discussed, but the same have all been taken into consideration in our final value. Neither has the Commission adopted any one particular theory of value, but has endeavored to give due consideration and weight to all theories and elements of value."

Following this statement the Commission put the total value of all the property of the company, tangible and intangible, used and useful, in Idaho as $3,800,000. The court adopted the $3,587,500 value and added the value of the St. Maries lighting system, $33,000.

[2] Having seen that the assessment of property other than public utilities was intentionally made by local assessors upon a valuation of 50 per cent. of cash value, but the property of the appellant, a public utility, was deliberately assessed by the state authorities upon a basis of 75 per cent. of actual value, we are met with the question whether appellant is entitled to injunction against the excess over which the general property of the state was assessed. Whether or not the state board of equalization assessed other utilities upon the basis of 75 per cent. of actual value is not vital in the present instance, because if the state board, knowing of the intentional assessment of property generally on a 50 per cent. value, assessed the property of appellant on a 75 per cent. basis, the fact that they may have assessed other public utilities upon a like basis cannot defeat the right of appellant to relief.

[3] In Greene v. Louisville & I. R. Co., 244 U. S. 501, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, we have the latest expression of controlling authority in a case somewhat analogous with the one now presented. There there was a systematic undervaluation of certain kinds of property other than railroads by assessing officers within the state of Kentucky, and a higher valuation upon railroad property by a state board in performing its duty correctly by assessing railroad properties at fair cash value. The court considered the question of the state law, and after citing sections of the statutes of Kentucky, which required uniform taxation upon all property subject to taxation within the limits of the levying authority according to the value, and the same rate as between corporate and individual property, assumed that the state board performed its duty by assessing the property of the railroad company at fair cash value, and then inquired what the effect

of such action was in view of the systematic undervaluation by the assessing officers charged with valuing other classes of property, and approved of the rule quoted in Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903, that—

"Uniformity in taxing implies equality in the burden of taxation, and this equality of burden cannot exist without uniformity in the mode of assessment, as well as in the rate of taxation."

The court said:

"It is equally plain that it makes no difference what basis of valuation— that is, what percentage of full value—may be adopted, provided it be applied to all alike. The adoption of full value has no different effect in distributing the burden than would be gained by adopting 75 per cent., or 50 per cent., or even 10 per cent., as the basis—so long as either was applied uniformly. The only difference would be that, supposing the requirements of the treasury remained constant, the rate of taxation would have to be increased as the percentage of valuation was reduced. * * * Therefore the principal, if not the sole, reason for adopting 'fair cash value' as the standard for valuations, is as a convenient means to an end—the end being equal taxation. But if the standard be systematically departed from with respect to certain classes of property, while applied as to other property, it does not serve, but frustrates, the very object it was designed to accomplish. It follows that the duty to assess at full value cannot be supreme in all cases, but must yield where necessary to avoid defeating its own purpose."

The court fortified this view by quoting extensively from the very learned opinion of Judge Taft, writing for the Circuit Court of Appeals for the Sixth Circuit in Taylor v. Louisville & Nashville R. Co., 88 Fed. 350, 31 C. C. A. 537. In that case the Constitution of Tennesee required that all property should be taxed according to its value so that taxes should be equal and uniform throughout the state. Certain kinds of property were valued by one body of officials, while property in general was valued by another. It is true there was no provision for equalization as between the two classes, but in the light of the facts, that in the instant case there was the deliberate discrimination, we do not believe that that point is of vital importance, because the case turned upon the broad principle that the sole and manifest purpose of the Constitution of the state was to secure uniformity and equality of burden upon the property in the state, and that as a means of securing such a result there was a provision that the assessment should be according to true value. Judge Taft, for the court, treated the case as one in which the complaining taxpayers and other taxpayers owning the same species of property were taxed at a higher rate than the owners of other species of property, and referred to the discrimination as brought about by the intentional and systematic disregard of the law by those charged with the duty of assessing all other species of property than that owned by complainant and its fellows of the same class. The court found itself placed in a dilemma, and said that an intentional undervaluation of a large class, where assessments at true value should be had, is necessarily designed to operate unequally upon other classes of property to be assessed by different taxing tribunals who presumably would conform to the law.

"The various boards whose united action is by law intended to effect a uniform assessment on all classes of property are to be regarded as one

tribunal, and the whole assessment on all classes of property is to be regarded as one judgment. If any board, which is an essential part of the taxing system, intentionally, and therefore fraudulently, violates the law by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at full value, though a literal compliance with the law, makes the whole assessment, considered as one judgment, a fraud upon the fully assessed property. And this is true, although the particular board assessing the complainant's property may have been wholly free from fault or fraud or intentional discrimination."

It is the justice of the principle stated that also prevailed in the recent case of Greene v. Louisville & I. R. Co., supra, and that appeals most forcibly to us. Cases which take a contrary view are regarded by the Supreme Court as taking "little or no account of the rights of aggrieved taxpayers."

[4] Should penalties be collected? Under the laws of the state of Idaho (section 113, c. 69, Sess. Laws 1915), taxes extended on the real property assessment roll shall be payable without penalty on or after the fourth Monday in November in the year in which the taxes are levied, and prior to the first Monday in January next thereafter, and all such taxes which have not been paid prior to the first Monday in January shall be delinquent, and the penalty of 6 per cent. of all such taxes shall be added thereto. By further provisions of the statute all delinquent taxes and penalties, as shown by the delinquency certificates, shall bear interest from the date of such certificate until paid, or until the issuance of tax deed, and such interest must be paid by any redemptioner of the property as a condition of redemption. Under these statutes one liable to pay taxes, and who makes a tender of an amount insufficient to cover the amount of the taxes lawfully assessed, becomes liable for all penalties and interest upon any sum found to be due. Western Union Tel. Co. v. State, 64 N. H. 265, 9 Atl. 547; Winnipiseogee Lake C. Co. v. Gilford, 64 N. H. 514, 15 Atl. 137; Western Union Tel. Co. v. State, 146 Ind. 54, 44 N. E. 793; Cedar Rapids R. Co. v. Carroll County, 41 Iowa, 153.

[5] It would appear from the allegations of the complaint that the tender made by the appellant was sufficient to cover taxes which should have been paid upon the property of appellant if the board of equalization had proceeded consistently with relation to valuation put upon other like property. Under such circumstances no penalty is recoverable.

The decree of the District Court is reversed, and the cause is remanded to the District Court, with directions to enter decree in accordance with the views herein expressed; and, should it be necessary for the court to hear additional testimony as to the exact amount which may be due, the court may proceed accordingly.

Reversed and remanded.