325 P.2d 278

In the Matter of the Appeal of R. M. FARMER from the Board of Equalization of Bannock County, and Order of State Tax Commission.

R. M. FARMER, Plaintiff-Appellant,

v.

STATE TAX COMMISSION, Defendant-Respondent.

No. 8604.

Supreme Court of Idaho.

April 23, 1958.

Rehearing Denied May 27, 1958.

Johnson & Olson, Pocatello, for appellant.

Graydon W. Smith, Atty. Gen., Elbert E. Gass, Edward J. Aschenbrener, Asst. Attys. Gen., P. A. McDermott, Asst. Pros. Atty., Hugh C. Maguire, Jr., Pros. Atty., Pocatello, for respondent.

KEETON, Chief Justice.

Appellant R. M. Farmer, hereinafter referred to as plaintiff, owns property in Pocatello, described as Lots 14 and 15, and the N. 5 ft. of Lot 17, and Lots 18, 19 and 20, Block 467, Pocatello Townsite. For the year 1956, for taxation purposes, improvements located on this property were assessed at $11,446. Plaintiff protested the assessment before the Board of County Commissioners, sitting as a Board of Equalization, which affirmed the assessment. On appeal, the State Tax Commission affirmed this order. Plaintiff then appealed to the District Court where the matter was tried de novo. The trial judge, without findings of fact and conclusions of law, entered judgment that the order of the Tax Commission affirming the order of the Board of Equalization be affirmed. Appeal was taken to this Court from the determination so made.

In assignments of error it is plaintiff's contention that the assessed valuation of improvements on the land above described is excessive, discriminatory, not assessed equally with other property of the same kind and class; that the assessments are not uniform; were made by persons usurping the powers and duties of the assessor; and the criterion for the assessment used to determine value is not authorized by law.

Further, plaintiff challenges the absence of any findings of fact and conclusions of law on the issues presented.

In substance, the appeal presents two questions for determination. First, the validity of the method used to determine the assessed value of plaintiff's improvements (buildings) for taxation purposes. Second, the question of whether plaintiff's improvements are assessed uniformly and on the same basis or standard used to determine assessed value of other property within the county.

For the purpose of establishing uniformity in assessments, the State Tax Commission used a manual containing a price index, showing replacement cost of the improvements, based on cost of construction of comparable structures at prices prevailing

in the years 1937 to 1941. From this replacement cost there was deducted depreciation for subsequent years, taking into consideration the life expectancy of the improvements. Thirty-five percent of the replacement cost, based on a standard of prices for 1937 to 1941, less allowed depreciation, was the value fixed for assessment purposes. By this method, the personnel of the State Tax Commission arrived at the value of improvements on Lots 14 and 15, Block 467, of $14,988, and for assessment purposes, $5,246; and using the same method for the N. 5 ft. of Lot 17, and Lots 18, 19 and 20, Block 467, arrived at a value of improvements of $17,713, and for assessment purposes, $6,200. The valuation thus computed on plaintiff's property by the State Tax Commission made a total ad valorem assessed value on improvements, for the year 1956, of $11,446.

The assessor and deputy assessor of Bannock County testified that plaintiff's property and other of like kind and character, classified as commercial property, was assessed, "fielded", and "computed" by the State Tax Commission through its commercial appraiser, and that the assessor's office merely entered the result on the assessment roll.

The witness Gee, assessor at the time, and for some years prior to 1956, was asked: " * * * can you specify any particular property that can be compared with this?" (meaning plaintiff's property). He answered:

"No, sir. Under the new system, since the survey, [meaning the survey of the State Tax Commission] we have made few, if any, comparisons of property. We have based our conclusions wholly upon the manual provided by the State Tax Commission, and on each property the valuation is reached in the same way."

The witness further testified he did not inspect or place a value on the property in question subsequent to 1952, and that for the years 1954, 1955 and 1956, the property was assessed conformable to the manual or guide of the State Tax Commission and by it.

There is no testimony that the persons doing the appraising and fixing of the value for taxation purposes determined, or attempted to determine, the market value or cash value, or what the property was fairly worth in money at the time the assessment was made, or that any other standard was used except replacement costs as of the years 1937 to 1941, less allowed depreciation.

■ The basis of the assessment or method used in determining the cash value is clearly erroneous.

In ascertaining the value of any property the assessor " * * * shall value each article or piece of property by itself and at

such sum or price as he believes the same to be fairly worth in money at the time such assessment is made". Sec. 63–202 I.C.

"Value", "cash value", or "full cash value" means the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business. Sec. 63–111 I.C. Replacement cost at a fixed time, less allowed depreciation, would not in itself determine the cash value, market value, or full cash value.

In determining the value, cash value, or full cash value, earning power is a criterion that may be considered. Likewise the original cost of the property, or replacement cost less depreciation, may aid in determining the value of the property for purposes of taxation. Replacement cost at a particular time, less depreciation constitutes one criterion, but not the exclusive criterion, to be used in determining cash value.

The method used to determine the value of the improvements on plaintiff's property, or other properties of like kind and character could produce a result which would reflect the actual cash value. Conversely, it might not. Such an exclusive method of fixing cash value could result in an erroneous or discriminatory value.

We conclude that the criterion or method used in fixing cash value exclusively at replacement cost of improvements based on an index of years 1937 to 1941, less depreciation, whether used by the State Tax Commission or the assessor, is erroneous, and not authorized by law. Other criteria of value, such as income, location, cost, actual cash sale value, or other pertinent factors should have been considered in determining assessed value.

In Anderson's Red & White Store v. Kootenai County, 70 Idaho 260, 215 P.2d 815, and Natatorium Co. v. Board of Commissioners, 67 Idaho 143, 174 P.2d 936, this Court announced the rule that all factors, including location, known or available, which affect the correct value of the property assessed should be considered to the end that the property of each taxpayer will bear its just proportion of the burden of taxation.

Other cases announcing a similar rule are City and County of Denver v. Lewin, 106 Colo. 331, 105 P.2d 854, syl. 17, and State of Ohio ex rel. Guilbert v. Halliday, 61 Ohio St. 352, 56 N.E. 118, 49 L.R.A. 427.

Plaintiff submitted evidence of the cash value of his property and comparisons of property of like kind, character and construction. Witness Healey, appraiser, with thirty-five years experience, whose qualifications were admitted, who had appraised property for F.H.A. and GI loans, presently employed (at the time of the trial) by the State of Idaho in the Highway Department, testified that he was familiar with the assessed value of property in Bannock Coun-

ty, and that for taxation purposes it was generally assessed at 13% of the actual cash or fair market value; that he had made a detailed examination of plaintiff's property and fixed the actual fair cash market value of improvements on Lots 14 and 15, Block 467, Pocatello Townsite, at $18,500, and the N. 5 ft. of Lot 17, and Lots 18, 19 and 20, Block 467 at $39,250. Using the standard at which other property in the county was assessed at 13% for taxation purposes, he fixed the taxable value of plaintiff's improvements at $7,507. No testimony was offered to dispute these figures.

In determining the actual cash value of plaintiff's improvements here in question, witness took into consideration earning capacity, location, cost of construction, replacement, expectant years of future use, depreciation and other factors.

The owner Farmer testified that he would accept and sell the property for the value placed on it by the witness Healey.

Pursuant to Sections 2 and 5 of Art. VII of the Idaho Constitution, all taxes shall be uniform upon the same class of subjects within territorial limits of the authority levying the tax, and every person or corporation shall pay a tax in proportion to the value of his or its property.

In order to obtain uniformity for ad valorem taxation the same basis of valuation should be used. Where property is assessed for taxation purposes at a percentage of its full cash value as of the date of the assessment, all property should be placed in the same category and taxed on the same basis of value.

In Anderson's Red & White Store v. Kootenai County, 70 Idaho 260, 215 P.2d 815, this Court held that for ad valorem tax purposes, the assessments are required to be made uniform and upon the same basis as other property.

Where property in a county was generally assessed at 50% of its cash value and other property in the county was assessed at 75% of its cash value, the Circuit Court of Appeals for the 9th Circuit, in Washington Water Power Company v. Kootenai County, 270 F. 369, held that the 75% assessment was not uniform and because of the unequal assessment, the taxpayer was entitled to a reduction to conform to the same standard that other property was valued. The same result was reached in Chastain's, Inc., v. State Tax Commission, 72 Idaho 344, 241 P.2d 167.

The provision of Sec. 63–102 I.C., which provides that real and personal property subject to assessment for tax purposes must be assessed at its full cash value, is subject to limitations that the values fixed for taxation purposes must be uniform. Where a percentage standard of actual cash value is used to determine the assessed value, such standard should be applied to all property assessed.

Where certain property is assessed at a higher value than all other property and a standard in determining the value for assessment purposes is used, which does not conform to the standard generally used, the taxpayer is entitled to a reduction in conformance to the standard used in assessing other property. Washington County v. First National Bank of Weiser, 35 Idaho 438, 206 P. 1054; McGoldrick Lumber Co. v. Benewah County, 54 Idaho 704, 35 P.2d 659.

In the situation before us, the witness Healey testified concerning the standard of 13% of actual cash value used in Pocatello to determine the value for assessment purposes. Under this standard it would follow that plaintiff's property for improvements on the N. 5 ft. of Lot 17, and Lots 18, 19 and 20, Block 467, should be assessed in the sum of $5102.00 and Lots 14 and 15, Block 467, should be assessed in the sum of $2405.00. To this should be added the value fixed on the land of $274 and $168, making a total for assessment purposes of the property in question in the sum of $7,949.

The judgment appealed from is reversed and the cause remanded with instructions to make findings of fact, conclusions of law and enter judgment in conformance to this opinion.

PORTER, TAYLOR, SMITH and McQUADE, JJ., concur.