[No. 7442.]

FOSTER, ET ALS. v. HART CONSOLIDATED MINING CO. .

CONSTITUTIONAL LAW—*Taxation—Classification for Assessment—Mines*—Exact uniformity in the valuation of property for the purpose of taxation is impossible. Rules prescribed by the legislature for the valuation of different properties, not clearly calculated to produce gross inequality and injustice in the assessment of different properties of the same class, will not be set aside by the courts. Properties of the same general character may be divided into classes, and different classes may be valued by different methods, provided, by the method as to a particular class, the burden of taxation is uniformly imposed upon all properties in that class, is just and equitable, and no property is exempted from its fair proportion of the common burden. Mines producing the precious and valuable metals may be placed in a class separate from mines of coal, iron, asphaltum, quarries of stone, and the like; and mines of the precious metals may be divided into those which are producing, and those which are not; and the assessor, in the valuation of non-producing mining property may be required to take into account the proximity thereof to other mines, and may be prohibited from assessing a non-producing mine at a greater sum per acre than is assessed against the lowest producing mine or mining claim situate in the same locality. The provisions of secs. 5617-5620, 5625, 5665 of the Revised Statutes are not unconstitutional— (467-473).

*Error to Teller District Court.*—HON. CHARLES CAVENDER, Judge.

Mr. TULLY SCOTT, Messrs. THOMAS, BRYANT, NYE & MALBURN and Mr. GUY P. NEVITT, County Attorney, for plaintiffs in error.

Mr. HILDRETH FROST, Messrs. VAILE, McALLISTER & VAILE and Mr. KARL C. SCHUYLER, for defendant in error.

The question involved is the validity of taxes assessed against non-producing mining properties located in Cripple Creek mining district. The determination of this question requires a consideration of the following provision of our constitution, article X, section 3:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

And, also, the following provisions of the revenue law of 1902:

"All taxable property shall be listed and valued each year, and shall be assessed at its full cash value; land to be listed and valued separate and apart from the personal property and improvements thereon." Sec. 5529, Rev. Stats. 1908.

"In determining the true value of taxable property, except as otherwise provided in this act, the market value shall be the guide * * *; provided, however, that this section shall not be held to apply to the assessment of mines or mining claims bearing gold, silver, lead, copper, or other precious metals, and possessory rights therein, but the same shall be assessed under the provisions of sections 81 to 81-H, 82 and 83 of this act, whether the same shall be owned by a corporation or not." Sec. 5591, *ibid.*

"All mines and mining claims bearing gold, silver, lead, copper, or other precious or valuable minerals, and

possessory rights therein, are hereby, for the purpose of assessment for taxation, divided into two classes,.to-wit: Producing and non-producing." Sec. 5617 *ibid*.

"All mines and mining claims whose gross production shall exceed five thousand ($5,000) dollars in dollars and cents per annum, shall be classed as producing mines, and all others shall be classed as non-producing mines." Sec. 5618 *ibid*.

"Every person or persons, corporation or association owning or operating any mines or mining claims which shall be a producing mine, as herein defined, shall, between the first and fifteenth days of January, each year, make out and deliver to the assessor of the county wherein such property is situate, a statement showing,

First. The name of the mine or mining claim;

Second. The name or names of the owner or owners thereof;

Third. The number of acres contained in such mine or mining claims;

Fourth. The number of tons of ore extracted during the preceding year;

Fifth. The gross value of any such ore extracted in dollars and cents;

Sixth. Actual cost of extracting the same from mine, which shall not include the salaries of any officers or agents not actively and consecutively engaged in or about the mine;

Seventh. Actual cost of transportation to place of reduction or sale;

Eighth. Actual cost of treatment, reduction or sale;

Ninth. The net proceeds in dollars and cents after deducting the above expenses. * * *." Sec. 5619 *ibid*.

"The assessor, when he receives such statement, shall determine the gross proceeds of any such producing mine or mining claim for said preceding year, and shall, at the same time, determine the net proceeds as herein defined for said preceding year, and shall, for the purpose of assessment for taxation, value such producing mine or mining claim at a sum equal to one-fourth of the said gross proceeds for said preceding · year for any such mine or mining claim; provided, however, that if the net proceeds as herein defined of any such producing mine or mining claim for said preceding year exceeds one-fourth of the gross proceeds, as herein defined, than any such producing mine or mining claim shall be valued, for the purpose of assessment for taxation, at the amount determined by the assessor as the net proceeds for said preceding year for any such producing mine or mining claim." Sec. 5620 *ibid*.

" * * * Provided, that the manner of assessment and taxation, in the sections hereinabove set forth, shall apply only to mines and mining claims bearing and producing gold, silver, lead, copper, or other precious or valuable metals or minerals, and shall not be construed to apply to mines of iron, coal, asphaltum, quarries, and lands valuable because containing other metals, minerals or earths, all of which shall be assessed and taxed like other property, according to the value thereof; and provided, further, that all mines or mining claims, or possessory rights therein, that are not producing gold, silver, lead, copper, or other precious or valuable metals or minerals, shall be assessed and taxed like other property according to the value thereof, and in ascertaining such value the assessor shall, in addition to the other requirements of this act, take into consideration the location thereof, the proximity to other mines or mining claims,

and any other matters which may tend to assist him in arriving at a fair and equitable valuation of such property; and provided, further, that nothing in this act contained shall be construed as giving the assessor any right to assess a non-producing mine or claim at a greater sum per acre than is assessed per acre against the lowest producing mine or claim, as herein defined, situate in the same locality." Sec. 5625 *ibid*.

" * * * Contiguous mining claims or mining lands to the knowledge of the assessor worked or operated through or by means of the same shafts, tunnels or other openings, or placer claims, to the knowledge of the assessor worked or operated by means of the same ditch, or other works, shall be assessed in one body, together with such ditches and works." Sec. 5665 *ibid*.

The defendant in error, The Hart Consolidated Mining Company, in its own, and in behalf of a number of other companies and individuals similarly situated, brought suit, the purpose of which was to annul a portion of the taxes levied upon non-producing mines in the Cripple Creek mining district, belonging to the plaintiff and others in behalf of whom the action was instituted. It is unnecessary to give a synopsis of the pleadings, as the parties agree that the facts thus established, in connection with those stipulated, present the question of the constitutionality of the revenue act of 1902 relating to the assessment and taxation of non-producing mines.

According to the undisputed facts, the assessor did not follow the law in valuing non-producing mining properties, as above provided, but placed a value on such properties for the purpose of an assessment for taxation, by determining the value thereof, without reference to, and independent of, the statutory provisions prescribing how the valuation of non-producing mining property shall be

determined for the purposes of taxation. As an example, the Hart group belongs to The Hart Consolidated Mining Company. This group consists of a little over thirty acres. It is non-producing, and was assessed at a valuation of $540.00 per acre. The Morning Star, an adjoining and producing mine, was assessed the same year at the rate of a little over $123.00 per acre. This valuation was assessed upon the basis of production. The cause was tried to the court, with the result that a judgment was rendered in favor of the plaintiffs, to the effect that the assessor could not lawfully and legally value the non-producing properties involved, at a greater sum or rate per acre than the lowest sum or rate per acre assessed on the producing mines or claims situated in the same locality.

It should be further noted that the assessor, in valuing producing mines, followed the provisions of the law relating to valuation of producing properties, but refused to be guided by the provisions relating to the manner the valuation of non-producing mining properties should be ascertained; that is to say, with respect to the latter class of properties, he refused to be guided by the provisions of section 5625 above quoted, which prohibit the assessor from assessing a non-producing mining claim at a greater sum per acre than is assessed per acre against the lowest producing mine in the same locality. This appears from a stipulation entered into between the parties at the trial, as follows:

"8th. In behalf of defendants, it is stipulated that, in making the said assessment herein complained of, the assessor valued the non-producing mine and mining claims for the purpose of taxation at about one-third of what he ascertained and found, or claims to have ascertained and found, to be the full cash value thereof, and

that he uniformly followed this method of determining the values which he assessed against the non-producing mining property in the Cripple Creek mining district for the year 1909."

This method resulted in the assessor placing upon the non-producing properties involved a greater valuation per acre than the producing properties in the same locality.

Mr. JUSTICE GABBERT delivered the opinion of the court.

On behalf of plaintiffs in error, the main point upon which they base their contention that the judgment is erroneous and should be reversed, is, that the statutory provisions involved and relating to non-producing mines are unconstitutional. Incidentally, at least, they contend that these provisions in so far as they relate to the assessment of producing mines, are, also, unconstitutional, and we shall consider that question first, as, to some extent, the constitutionality of the act relating to non-producing properties depends thereon.

The act of 1887 provided that a certain per cent. of the gross proceeds obtained from ores extracted from a mine during the preceding fiscal year should constitute its value for revenue purposes, and that it should be assessed and taxed accordingly. This act was considered in *People ex rel. v. Henderson,* 12 Colo. 369, and it was there held that the act was not obnoxious to the provisions of the constitution requiring taxes to be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and that taxes should be levied under general laws prescribing regulations which would secure a just valuation for taxes on all property.

It was also held that the method prescribed by the act for determining the value of mining property for the purpose of taxation was not invalid. The reason assigned for this ruling was, that where the same method was applied without discrimination, throughout the state, to the valuation of all property belonging to a particular class, the requirement of the constitution referred to is complied with.

The act of 1902 divides mines producing gold and other precious metals into two classes, producing and non-producing. The producing class are those the gross proceeds of which exceed five thousand dollars per annum. The act also provides that the person owning or operating a producing mine shall make out a statement and deliver it to the assessor, the purpose of which is to exhibit the gross and net proceeds per annum of such mine. From this statement the assessor is required to determine the gross and net proceeds of the mine to which it refers, and for the purposes of taxation shall value the mine at one-fourth of the gross proceeds, unless it appears that the net proceeds exceed one-fourth of the gross proceeds, in which event it shall be valued at the sum representing the net proceeds.

Two propositions are advanced by counsel for plaintiffs in error, in support of their contention that the present revenue law relating to the assessment of mines is invalid: (1) That fixing the gross production in excess of five thousand dollars per annum as the basis upon which producing and non-producing mines are classified is invidious and unreasonable; and (2) that the proviso in section 5625, Revised Statutes, limiting the assessment of non-producers to a sum not exceeding the sum at which the lowest producing mine in the same locality is assessed per acre, is unconstitutional.

Generally speaking, mines producing the precious metals are only valuable for the ores they contain. Such value, intrinsically, is limited to the net value of such ores; that is, what is realized from their sale and reduction after the expense of extracting, reducing and shipping them to market is deducted. It is a well-known fact that in the great majority of mines large sums of money must be expended in opening up the ore bodies and equipping them for successful operation. We must assume that the general assembly was familiar with these conditions, and understood as a fact that in most instances a mine the gross proceeds of which did not exceed five thousand dollars per annum, did not leave any net profits to the owner or operator. True, in some instances, as stated by counsel, a mine producing gross proceeds in a sum less than five thousand dollars per annum might leave the owner or operator a handsome profit, and that another property producing much more than five thousand dollars within the same period would not yield any profit, and that the latter under the law would be compelled to pay a tax which the former would escape. It is also true, that fixing the maximum production at five thousand dollars per annum is arbitrary, in a limited sense. The same could have been said about the act of 1887, which fixed the production at one thousand dollars per annum. But any plan of assessment for taxation based on production must be arbitrary, whether great or small, but is not so, in the sense that for this reason it should be regarded as invalid, as the purpose of fixing the gross proceeds in excess of a specified sum as the criterion to govrn assessors in determining the value of mining properties is to fix their value on the basis of the profits realized in operating them, which, from their nature, represents their true and actual value. Mines are

valuable only by extracting their values. Each ton of ore extracted reduces by that much the value of the property from which it is taken. Sooner or later the ore bodies in a property being operated will be exhausted, and what then remains is generally worthless.

It is also urged that if the legislature may fix the gross yield at five thousand dollars per annum, under which a mine is classed as non-producing, that it might so declare as to one yielding five hundred thousand dollars, or five million dollars, or that it might declare that a producing mine should not be assessed at a sum per acre in excess of the values per acre of the lowest non-producing mine in the same locality.

The constitution leaves the subject of assessing mines to the wisdom of the legislature by simply requiring that it shall prescribe regulations by general law which shall secure just valuations for the purposes of taxation. If rules so prescribed are not clearly calculated to produce gross inequality and injustice in the assessment of different parcels of property belonging to the same class, the courts will not interfere. No doubt instances of injustice and hardship will sometimes result under the statute now under consideration, but this is necessarily true of all statutes providing methods for the assessment and taxation of property. Exact uniformity and mathematical accuracy in values for these purposes are absolutely impossible. No statute can be framed which would bring about these results. As was said in the *State Railroad Tax Cases,* 91 U. S. 575, and quoted with approval in the Henderson case: "Perfect equality and perfect uniformity of taxation, as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized." If it were necessary, in order to comply with the constitutional requirement

regarding uniformity of taxation, that a statute to that end must prescribe such rules as would bring about absolute exactness, it would be impossible to frame one which would stand the constitutional test.  We do not think the five thousand dollar limitation is invidious or unreasonable, or that upholding this limitation as valid will result in requiring this court to uphold some future act of the legislature which, by reason of its provisions with respect to valuations of mining property for the purposes of taxation, would clearly be unreasonable.

The purpose of fixing the gross proceeds in excess of a specified sum was to classify mining properties as producing and non-producing, and that when the gross proceeds exceeded the sum specified, a fixed proportion thereof, or the actual net proceeds if they exceeded such proportion, would fix the value of such property for the purposes of taxation.  Should our legislature, at some future time, place the gross output at such a large sum and still adhere to the present method of assessing mining properties, that such output would appear to be manifestly unreasonable and unjust as a guide from which to determine whether or not a property was producing or non-producing, a way would be found to correct it.

The act is also attacked upon the ground that the provisions of section 5665 will produce inequalities, for the reason that a group of claims constituting one producing property would not be required to pay any greater tax than a producing property consisting of but one claim, or a fraction of a claim, producing a similar amount.  We do not regard this as material.  The valuation for the purpose of taxation of a producing property is based upon a percentage of such production, or the net proceeds if they exceed the percentage specified, and not upon area.  It is also urged that inequality may result from assessing

a group of claims as a producer in this way: If owned and operated in severalty, each might produce less than five thousand dollars, but in the aggregate the production would amount to more. The section refers to contiguous claims owned or operated by the same party through a common shaft or other opening, and not to contiguous claims owned in severalty and worked separately. Each class is assessed upon exactly the same basis—a part of the gross output; consequently, there is no inequality or discrimination.

The act is also attacked upon the ground that section 5625 does not apply to mines of iron, coal, quarries and lands containing other metals, minerals or earths not classed as precious, and, therefore, discriminates in favor of one class of mining properties as against others. There is a reason for the exemption of quarries and mines of coal and iron. Deposits of this character usually exist in such quantities, and are, generally, of such uniformity throughout an extended area, that it is not difficult to determine their value. With respect to ores carrying the precious metals, experience has established the converse. The veins are usually small, often ill-defined, irregular, uncertain in extent, and distributed through masses of barren rock, so that their values can not be ascertained with any reasonable degree of certainty until mined.

The section of the revenue act relating to the valuation of non-producing mines for the purpose of assessment is to the effect that they shall be assessed according to the value thereof, and that the assessor, in fixing such value, shall take into consideration the location of such property, and its proximity to other mines, but shall not assess a non-producing property at a greater sum per acre than is assessed per acre against the lowest producing mine situated in the same locality. Numerous reasons

are urged by counsel for plaintiffs in error against the validity of this section, all of which may be determined by considering two questions: (1) Can the general assembly place non-producing mines in a class by themselves; and (2) if so, has its authority to provide for the assessment of this class of property been constitutionally exercised?

So long as classification is based upon the nature of property justifying it, there is nothing to forbid legislative classification for the purposes of taxation, or to prevent the fixing of valuation of different classes by different methods, provided that by the method prescribed for a particular class of property the burden of taxation is uniformly imposed upon that class, is just and equitable, and does not exempt it from bearing its fair proportion of the burden of taxation, as compared with other classes of property. Generally speaking, non-producers are only valuable for the ores they contain. Practically, it would be impossible for an assessor to ascertain the extent of the ore bodies in such properties, or their value; consequently, it is patent that some reasonable method must be devised by which to fix the value of a non-producer for the purposes of taxation. In as much as producing mines may be placed in a separate class, and taxed on a special basis of valuation, we think that non-producing mines are of such a character that they can also be placed in a class by themselves for the purposes of prescribing a method of assessment. The general assembly can not assess any class of property for the purposes of taxation. This is the function of the respective county assessors, but the legislature, by general laws, may prescribe such regulations for the guidance of these officials as shall secure a just valuation for taxation. *Taxation of Mining Claims,* 9 Colo. 635.

The legislature, in providing for the assessment of non-producing claims, has not violated this rule. It has not assessed that class of property by placing a value thereon, but has merely prescribed regulations for the assessor to follow in order to secure a just valuation for the purpose of taxing it. He is required to assess it according to value. In order to ascertain that value, he shall take into consideration its location and proximity to other mines, and any matters which may aid him in arriving at a fair and equitable valuation. There is certainly nothing in any of these provisions which will prevent the assessor, in valuing non-producers, from discharging his functions. On the contrary, they point out how the fair and equitable valuation which he is to fix shall be ascertained. Nor does the provision, to the effect that in valuing such property the assessor shall not assess a non-producing property at a greater rate per acre than is assessed per acre against the lowest producing mine in the same locality, place a limitation upon the functions of the assessor which is invalid. What the total amount assessed against a producing property amounts to per acre can readily be determined. By section 5619, R. S., the owner of a producing property is required to return the number of acres in the claim or claims constituting the property classed as producing. By section 5665 the assessor is required to assess in one body the several contiguous claims constituting a producing property which are operated through a common shaft, tunnel or other opening; so that there can never be any difficulty from the data which the owner is required to furnish and the manner assessments shall be made in the assessor ascertaining what the total assessed valuation fixed for a single or several contiguous properties amounts to per acre. As previously stated, a mining

property is only valuable for the ores it contains. What this may be in a non-producer is purely speculative. A mine which is producing ores is intrinsically of more value than one which is non-producing; so that the rules prescribed for an assessor to follow in fixing the valuation of a non-producer simply require that he shall ascertain the value for the purposes of taxation by a method which will be equitable and just, and which will not result in placing upon it a greater valuation than a producing property in the same locality which is manifestly of a greater intrinsic value.

By the provision under consideration the assessor is required, in placing a valuation on non-producing properties, to, in effect, follow the same rule, so far as practicable, prescribed for producing properties. The real basis of this rule is net proceeds, which, in fact, is all any mining property is actually worth, a value, however, which can not be determined with any degree of accuracy until the ore is extracted and disposed of. By requiring the assessor, in fixing the value of a non-producer, at a sum not exceeding the value placed upon the lowest producer in the same locality, a method for valuation of a non-producer has been prescribed which approximates net proceeds of producers in the same locality. This valuation, though speculative in a measure, as to a non-producer, is as nearly certain, just and equitable as the nature of that class of property will permit. The rule prescribed for fixing this valuation prevents the assessor from placing a higher value upon a non-producer than the valuation of the lowest producer in the same locality, but this does not interfere with his official functions. It merely requires him to follow a rule in fixing valuation which, from the nature of the property to which it refers, will result in a just valuation as compared with other mining

property in the same locality of greater intrinsic value. *The Pilgrim C. M. Co. v. Teller Co.*, 32 Colo. 334. On the authority of that case, we do not think that the proviso in section 5625 adds anything to the act, or prescribes a rule different from that which the assessor would be required to follow if the proviso had not been added, for the reason that without it, the assessor could not legally value a non-producer at a greater sum than producers. In the Pilgrim case, it was said, in speaking of the act of 1887, which did not contain the proviso found in section 5625:

"It is not to be supposed that it contemplated that the methods it furnished in the general revenue. law, and which this court has said must be employed to ascertain the valuation of a non-producing mine would, or could, result in an assessment larger in amount than that made in accordance with the specific instructions it prescribed for securing the valuation of a more valuable producing mine similarly situated. In other words, when the general assembly, by the specific methods it provided therefor, limited the valuation which the assessor can place upon a more valuable producing mine, the assessing officer may not, by employing the methods adapted to other real estate, put a greater valuation upon a less valuable non-producing mine alongside of, or similarly situated to, the former."

The trial judge held, in effect, that "locality," as employed in section 5625, was equivalent to "neighborhood," "vicinity" or "proximity," and not necessarily adjacent to or adjoining; that where mines, called producing mines, and mining claims called non-producing, are situated on the same hill or in the same gulch, or in the same general group of mines or mining claims, or in the same geological formation, such mines or mining claims

may be said to be in the same locality. Counsel for plaintiffs in error say that they are not prepared to challenge the accuracy of this definition. Counsel for defendants in error assert that it is not altogether accurate; but admit that, in the circumstances of this case, they could not assign any cross-error upon the definition given by the trial judge. In such circumstances, we do not think we are called upon to determine whether or not the definition is correct.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUSSER not participating.