# THE STATE ex rel. W. M. TOMPKINS v. AUBREY SHIPMAN.

### In Banc, October 8, 1921.

1. **TAXATION: Secured Debts: Property: Valuation.** The Secured Debts Tax Act of 1917, Laws 1917, page 539, by its own words and in many phrases, classifies the securities by it defined for purposes of taxation, as property, and creates of them "a separate and distinct class of property for purposes of taxation;" and it ignores actual value altogether, and upon a basis of face value fixes a tax out of all proportion to the taxes levied and collected upon other property, both personal and real. It is, therefore, invalid, and violative of that clause of the Constitution which declares that "all property subject to taxation shall be taxed in proportion to its value."

2. ———: ———: ———: **Classes: Uniformity.** That clause of the Constitution which requires uniformity of taxation "upon the same class of subjects" (Sec. 3, Art. 10) is no authority for a subdivision of property into different classes and for the fixing of different rates of taxes on the different classes. That section deals with subjects of taxation, and not any particular subject; its purpose was to secure uniformity of taxation, whatever be the subject of taxation. The Constitution creates only two classes of property, namely, property that is taxable and property that is exempt from taxation, and as to taxable property it says that "all property subject to taxation shall be taxed in proportion to its value," and thereby it puts all taxable property into a single class and completes the rule for uniformity.

3. ———: ———: **Separate Classification: Act of 1917: Uniformity.** The Constitution places all taxable property in one class, and requires that the tax thereon shall be uniform in proportion to value; and the Secured Debts Tax Act of 1917 is therefore invalid, because it segregates secured debts from unsecured debts and from all other property, and fixes a different rate of taxation upon such property from that fixed upon other property, and that rate is not uniform even as to all secured debts.

4. ———: ———: ———: **According to Value.** The constitutional requirement that "all property subject to taxation shall be taxed in proportion to its value" is mandatory on the Legislature, imposes

290 Mo.—5

a rule for its assessment which cannot be varied, forbids the levy of specific taxes, and prohibits a subdivision of properties into different classes and their taxation at different rates. The Legislature cannot divide property into different classes for the purposes of taxation.

5. ————: ————: **Ignoring Road and Bridge Tax.** The Secured Debts Tax Act of 1917 ignores Section 22 of Article X of the Constitution, which provides that the township board of trustees in counties having township organization and the county court in all other counties may levy a tax on all property for road and bridge purposes, up to twenty-five cents on the hundred dollars' valuation, in that the act allows the township board to levy no tax at all, and limits the counties to a tax of ten cents on the hundred dollars for all purposes in a period of two years, and thereby ruthlessly wipes out the constitutional right of the counties and townships to levy taxes on secured debts for road and bridge purposes.

6. ————: ————: **Valuation by the Legislature.** In Missouri the Legislature is without power to assess property. The Secured Debts Tax Act of 1917 provides for a property tax without having an assessment or determination of value; but if it could be construed to have fixed the value of securities at their face value, it would still be void because the Legislature has no power to assess and fix the value of individual properties for purposes of taxation, that power being committed by the Constitution to assessment officers.

## Mandamus

WRIT DENIED.

*W. V. Draffen* for relator, W. M. Tompkins.

(1) Section 4, Article X, of the Constitution, does not apply to a tax upon a franchise, license or privilege, and the "Secured Debt Tax Law" is a tax upon a privilege. Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339; Glasgow v. Rowse, 43 Mo. 479; Maguire v. University of Missouri, 271 Mo. 359; State ex rel. v. Henderson, 160 Mo. 190; State v. Bengsch, 170 Mo. 81; Kansas City v. Richardson, 90 Mo. App. 450; State v. Fuel & Iron Co., L. R. A. 1915A, 185; Collieries Co. v. Commonwealth, 113 Va. 108; Bradley v. Richmond, 110 Va. 521; Saville v. Va. Railroad & Power Co., 114 Va. 444; Mutual Ins. Co. v.

County of Martin, 104 Minn. 179; State v. North & Scott, 27 Mo. 483; 12 C. J. 971. (2) The "Secured Debt Tax Law" does not operate unequally upon the same class of subjects within the territorial limits of the authority levying the tax, and the classification as therein defined is within the power of the Legislature. Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 357; White v. Railroad, 230 Mo. 287; Humes v. Railroad, 82 Mo. 231; Daggs v. Ins. Co., 136 Mo. 382; Geist v. St. Louis, 156 Mo. 647; Hamman v. Coal Co., 156 Mo. 232; State ex rel. v. Henderson, 160 Mo. 216. (3) The "Secured Debt Tax Law" does not exempt property from taxation as that term is used in Section 7, Article X, of the Constitution. Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 356; State ex rel. v. Schramm, 271 Mo. 227; State v. St. Louis, Kansas & Northern Railroad, 77 Mo. 202; Russell v. Croy; 164 Mo. 97. (4) The "Secured Debt Tax Law" does not deny to anyone the equal protection of the law. Cases under Point 2; 12 C. J. 1151.

*Mahan & Mahan, Wallace W. Greene, Spencer & Donnell* and *Charles & Rutherford* for relator John T. Doneghy, Jr.

(1) Suggestions in reply to argument of respondent Shipman that the Constitution has classified in one single class all property subject to taxation. Commonwealth v. Bank, 168 Pa. St. 309; Hilger v. Moore, 182 Pac. 477; Wheeler v. Weightman, 96 Kan. 50. (2) Argument of respondent Shipman relative to bonds of fractional amounts overlooks fact that the Secured Debts Law is an optional law, that its constitutionality cannot be attacked by the holder of such fractional securities because he is not injured, and that the constitutional requirement of taxation "in proportion to value," as used by the framers of the Constitution, is fully complied with by the Secured Debts Law. In re Watson, 226 N. Y. 384; Danciger v. Express Co., 247 Mo. 212. (3) There

is no exemption from taxation granted by the Secured Debts Law. In re Wolverine Oil Co., 154 Pac. 362. (4) Sections 11 and 22 of Article 10 are not violated. Brooks v. Schultz, 178 Mo. 227. (5) Similar act in force in other states for years, and decisions sustaining them. Mutual Ins. Co. v. County, 104 Minn. 179; Trustees v. Hooton, 157 Pac. (Okla.) 293; State v. Fuel & Iron Co., 188 Ala. 487, L. R. A. 1915A, p. 185; Union Trust Co. v. Detroit, 170 Mich. 692; People v. Gass, 206 N. Y. 609; Matter of Watson, 226 N. Y. 404.

*Dorsey W. Shackleford, Henry W. Chalfant* and *Barney Reed* for respondent.

(1) "When any article of property is selected for taxation it shall be taxed in proportion to its value, and not specifically." State v. North, 27 Mo. 483; Hamilton v. St. L. Co. Ct., 15 Mo. 24; Glasgow v. Rowse, 43 Mo. 489; Life Assn. v. Board, 49 Mo. 521; St. Louis v. Spiegel, 75 Mo. 145; Wire Co. v. Wollbrinck, 275 Mo. 353; Verdery v. Summerville, 82 Ga. 138; Mayor v. Weed, 84 Ga. 686; Atlanta Assn. v. Stewart, 109 Ga. 91; Wheeler v. Weightman, 96 Kan. 65; Ewert v. Taylor, 160 N. W. 802; Reelfoot v. Dawson, 34 L. R. A. 725; Sec. 4, Art. 10, Mo. Const. (2) The Legislature has no power to exempt property from taxation, except such as is mentioned in Section 6, Article X, of the Constitution. This inhibition precludes commutations and partial exemptions, as well as exemptions *in toto*. Sec. 7, Art. 10, Mo. Const; Life Assn. v. Board, 49 Mo. 512; Georgia v. Savannah, 109 Ga. 63; Atlanta v. Stewart, 109 Ga. 80; Hogg v. Mackay, 23 Ore. 339; State v. Ins. Co., 100 N. W. 405; State v. Ins. Co., 99 N. W. 37; Huntington v. Worthen, 120 U. S. 97; Louisiana Cotton Co. v. New Orleans, 31 La. Ann. 440. (3) Even if it should be held that the taxes levied by the act under consideration were in fact excise taxes, which we deny, still said act would be void, because of exemptions contained in the last clause of Section 13138 thereof. Secs. 7, 22, Art. 10, Mo. Const.

GRAVES, J.—Original action in mandamus. The petition, by stipulation, was taken as and for our alternative writ, and return was duly made thereto. Relator moved for judgment on the pleadings. The cause was then taken as submitted on briefs to be filed later. Thereafter some friends of the court were permitted to file briefs. The petition succinctly states most of the facts, and reads:

"To THE HONORABLE JUDGES OF SAID COURT:

"The petition of W. M. Tompkins respectfully represents that one Aubrey Shipman is now and was at all the times mentioned in this petition the duly elected, qualified and acting Recorder of Deeds within and for the County of Camden, in the State of Missouri; that this petitioner does now and did at all the times mentioned in this petition reside in said County of Camden, in the State of Missouri.

"That on the 30th day of April, 1921, one John M. Cooper did sign, seal and deliver unto this petitioner his bond and obligation for the payment of money, to-wit, fifty dollars, with interest thereon at the rate of eight per cent per annum from the date thereof, which bond and obligation for the payment of money, by its terms, is not payable within one year from the date of issue thereof, and the payment thereof is not and was not secured by the deposit or pledge of any collateral security, nor by a mortgage or deed of trust wholly or in part upon real estate; that on the 2nd day of May, 1921, this petitioner took said bond to the office of the Recorder of Deeds of said County of Camden, in the State of Missouri, and offered to pay to the said Aubrey Shipman as such Recorder of Deeds for said county, for the account of the general revenue fund of the State, a tax at the rate of ten cents on each one hundred dollars or fraction thereof of the face value of said bond and obligation for the payment of money, to-wit, the sum of ten cents, and demanded that the said Shipman, as such Recorder of Deeds accept said sum and affix stamps of the proper denomina-

tions, equal in face value to the amount of the tax on said bond and obligation for the payment of money, to-wit, the sum of tne cents, and further demanded that said Shipman, as such Recorder of Deeds, cancel said stamp or stamps.

"Your petitioner further states that notwithstanding said tender and demands by this petitioner, the said Shipman, as such Recorder of Deeds, refused to receive said sum and to affix and cancel the said stamps, and stated that he would continue to so refuse. Petitioner further states that unless and until petitioner shall have paid the above-mentioned tax he is liable to and will be compelled to pay in lieu thereof a tax under the general revenue laws of this State in a sum far greater than the amount of the tax above mentioned.

"Petitioner further states that he is remediless in the premises by or through ordinary process or proceedings at law, and he, therefore, prays this Honorable Court to award against said Aubrey Shipman, as such Recorder of Deeds of the County of Camden, in the State of Missouri, a writ of mandamus, commanding and requiring him to accept payment of said tax and to affix to said bond and obligation for the payment of money, said stamps and to cancel said stamps, in accordance with the provisions of Chapter 119, Article 20, Revised Statutes of the State of Missouri of 1919; and for such other process, orders and remedies as to the court may seem meet and proper."

The return admits that all the facts stated in the petition are true, but adds the following material facts:

That the relator at all times mentioned in his petition, was, and now is, a resident of the village of Linn Creek, in the County of Camden and State of Missouri; that the rates of taxes authorized by law now levied upon real and personal property in said village of Linn Creek aggregate $2.43 on each $100 valuation; that a 'secured debt' as defined in Article XX, Chapter 119, of the Revised Statutes of 1919 of the State of Missouri, which matures a greater length of time after payment of taxes

thereon, under said Article XX, is not of less value, than another 'secured debt' of the same amount and like character in every respect, except that it matures in a short time after the payment of taxes thereon under said Article XX.''

The return then attacks from many angles the constitutionality of the ''Secured Debt Tax Law'' upon which relator relies for his cause of action. Such of these attacks as are deemed pertinent will be noticed in the course of the opinion. By filing a motion for judgment on the pleadings, relator admits all well pleaded facts in the return, and hence the inclusion of those facts, supra. This outlines the case.

I. The statute before us in this case is Article XX, Chapter 119, Revised Statutes 1919. This is the Act of 1917, Laws 1917, page 539. By it the General Assembly undertook to select the following three subdivisions of property, and place them into a class for taxation, viz.:

''(1) Any and all bonds, notes, debentures or obligations for the payment of money, whether forming a part of a series or otherwise, which are secured by collateral security deposited with a trustee under a deed of trust or collateral agreement to secure the payment of such bonds, notes, debentures or obligations.

''(2) Any and all bonds, debentures or similar obligations for the payment of money, whether forming part of a series otherwise, which by their terms are not payable within one year from their date of issue, and the payment of which is not secured by the deposit or pledge of any collateral security, nor by a mortgage or deed of trust, wholly or in part, upon real estate.

''(3) Any and all bonds, notes, debentures, or obligations for the payment of money, whether forming a part of a series or otherwise issued by any state or political subdivisions thereof.

"Securities as thus defined, shall constitute a separate and distinct class of property for purposes of taxation."

The bond upon which relator in this case sought to pay the tax, falls within the second sub-division, supra. The suit must be governed by the Act of 1917, because the amendments made to Chapter 119, Article 20, Revised Statutes 1919, in 1921, were not in force at the institution of the suit. Respondent's refusal to act must be justified, if at all, by the law then in force, so that we shall construe the Act of 1917, and none other. Respondent says this act is unconstitutional, and thus justifies his action. After taking these three sub-divisions of property, and putting them in a single class for the purposes of taxation, the General Assembly fixed the following tax rates:

"After this article takes effect any person may take or send to the office of the recorder of deeds of the county in which he resides any secured debt and may pay to the said recorder for the account of the general revenue fund of the State a tax at the rate of five cents on each $100 or fraction thereof of the face value of such secured debt which shall mature not more than one year from the date of the payment of such tax; a tax at the rate of ten cents on each $100 or fraction thereof of the face value of such secured debt which shall mature more than one year and not more than two years after the payment of such tax; a tax at the rate of fifteen cents on each one hundred dollars or fraction thereof of the face value of such secured debt which shall mature more, than two and not more than three years after the payment of such tax; a tax at the rate of twenty cents on each $100 or fraction thereof of the face value of such secured debt which shall mature more than three years and not more than four years after the payment of such tax; a tax at the rate of twenty-five cents on each $100 or fraction thereof of the face value of such secured debt which shall mature more than four years after the payment of such tax. Any contract or

agreement, by which the time of the payment of any such indebtedness shall be extended or deferred, shall be deemed to be a secured debt for the purpose of this article, and shall be taxed as such upon the amount for which the extension of the time of payment is granted at the rates hereinbefore specified for the period of such extension. In addition to the tax above provided for the account of the general revenue fund of the State, each county in the State and the city of St. Louis, as a county, may levy for the account of general revenue fund of the county and for the account of special funds, distributed in such manner as the county court may determine, a like tax on secured debts owned by residents of the county, the total of which shall in no event exceed for all purposes the amount herein provided to be levied for the account of the general revenue fund of the State. The cities and incorporated towns of the State may, in addition to the tax herein provided to be levied for the account of the general revenue fund of the State and the tax authorized by the counties of the State, levy a further tax on secured debts owned by residents of the city or incorporated town, for the account of the general revenue fund of the cities and incorporated towns and for the account of special funds, distributed as the levying authorities of the cities and incorporated towns may direct, which tax by cities and incorporated towns shall in no event for all purposes exceed the rate herein provided to be levied for the account of the general revenue fund of the State. After the payment of the tax, levied and authorized by this article, the secured debt upon which the same shall be paid shall be exempt from all other or further taxation by the State, counties, cities, towns, villages, school districts and other legal subdivisions of the State, except that renewals of any such debt shall be taxed as provided in this article.''

It will be noticed that the tax rate is upon an ascending scale fixed by the maturity of the obligation, and that the basis of the tax is the face value, rather than the actual value of the instrument. Three separate levies of this rate are permissible, i. e. (1) for the State,

(2)   for the county, and (3)   for cities and towns.   The county tax for all purposes cannot exceed the state tax, nor can the city or town tax for all purposes exceed the state tax.   In the instant case for state, county and town taxes this $50 bond would pay the magnificient sum of thirty cents.   If it were a hundred-dollar bond rather than a fifty-dollar. bond, it would pay the same sum.   It would pay no school tax, township tax, road district tax, bond tax, but all would go to the general revenue funds of the State, county and city or town.

It stands admitted that relator lives in the village of Linn Creek and that the taxes now levied, and authorized by law, upon real and personal property in said village, for all purposes, is $2.43 on each $100 valuation. On a fifty-dollar valuation the tax on this bond would be $1.21 per year of its existence, as against thirty cents under this Act of 1917, for the two years of its existence. Under these facts several questions present themselves, and among them are (1) can there be such a classification of property, as made by this act, under the Constitution, and (2) if there can be a classification, is the one made a reasonable one, and one upon a reasonable basis, rather than an arbitrary and capricious basis.

II.   The character of the tax imposed by the Act of 1917 is very material to the issues involved.   Heretofore all the items mentioned in this Act of 1917 have been considered as "property," and have been assessed and taxed as "property."   Heretofore the assessor listed all these items and fixed their value for the purpose of collecting a property tax thereon.   These several items included in the three sub-divisions of the present law, supra, were not considered other than personal property, and were assessed and taxed as "property."   The taxes imposed were property taxes, and fell under the terms of Section 4, Article X, of the Constitution, which reads:

Property.

"All property subject to taxation shall be taxed in proportion to its value."

The Act of 1917 ignores actual value altogether, and upon a basis of face value fixes a tax all out of proportion with the taxes levied and collected upon other property, both personal and real. If relator owned an ox worth $50 at the time he owned this bond, his tax upon the ox would have been $1.21 for each year, whilst his tax on the bond would be (under the Act of 1917) only thirty cents for all purposes for two years, or fifteen cents per year. Wherein comes uniformity of taxation on property?

Going further into the character of the tax provided for by this Act of 1917, it should be noted that the act itself classifies the things taxed as "property," for it says: "Securities as thus defined, shall constitute a separate and distinct class of *property* for purposes of taxation." Nor is this all, the act further says:

"Until the tax imposed by this article upon any secured debt shall be paid as herein provided, such secured debt shall remain subject to taxation as now provided by law."

The very act itself recognizes that it is dealing with "property" and that it is taxing "property." It says that it is creating "a separate and distinct class of *property* for *purposes of taxation*." The tax imposed is a property tax and can be none other under the very terms of the law itself.

After creating the "class of property" it then fixes the property tax rate upon such class. It is a property tax pure and simple, and the question is, can it stand under our Constitution? We think not, and for reasons next assigned.

III. Subjects of taxation constitute several things. The general sub-divisions are (1) property, (2) polls and (3) excises, so that the general sub-division of taxes are (1) tax s on property, (2) poll taxes, and (3) excise taxes. [?6 R. C. L. 34.]

<span style="float:left">Classes of Property.</span>

The term "excises" has been made to cover a broad field. The authority, supra, says:

"Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word has, however, come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation."

Section 3, Article X, of our Constitution requires uniformity of tax "upon the same class of subjects," and it is urged that this section is authority for a subdivision of "property" into different classes, and for the fixing of a different tax upon one of the classes of property than is fixed upon the other remaining kinds of property. We do not so view this section of the Constitution. It is dealing with subjects of taxation, and not with any particular subject of taxation. Its purpose was to secure uniformity of taxation, whatever be the subject of the taxation. And as to excises it might have reference to sundry classes or subjects. But the whole question is solved by Section 4 of Article X, of the Constitution, because it puts all property subject to taxes into a single class, and fixes the rule of taxation thereon. It says: "*All* property subject to taxation shall be taxed in proportion to value." The word "*all*" does not mean a part shall be taxed "in proportion to value" and another part be taxed according to an unconstitutional ukase of the law-making power. The only kinds of property which can be taken from "all property" mentioned in Section 4, supra, are the exemptions in Section 6 of said Article X. These exemptions are not taxed at all, and the law-making power cannot increase the list of exemptions. [Sec. 7, Art. 10, Constitution.] The Constitution thus creates two classes of property, (1) taxable, and (2) exempt.

So far as the basis of taxation is concerned Section 4 of Article X puts *all* property into a single class. By *all* property is meant not only real and personal property, but the divers kinds of each. There are divers classes or kinds of personal property, but they each and·all fall within the term "all property" used in said Section 4 of Article 10, supra, for the purposes of taxation. So that as to property the Constitution itself ·has made for purposes of taxation a single class, and the law-makers are powerless to sub-divide. That class, so fixed by the organic law, is "all property subject to taxation" and the method of its taxation shall be "in proportion to its value." Property subject to taxation includes everything in the shape of property save the exemptions made by Section 6 of Article X. When the Constitution makes a single class, the law-making power has no constitutional right to change or sub-divide that class for the purpose of taxation, and this is what the Act of 1917 undertakes to do. This constitutional provision (Sec. 4, Art. X.) never contemplated that the property covered by the Act of 1917, should be separated from "all property," and placed in a class to itself for purposes of taxation. Excises have not been thus dealt with in the Constitution. But property has been put off to itself (as one subject of taxation) and its method of taxation fixed.

IV. In one of the divers briefs before us we are cited to 37 Cyc. 746, bearing upon the classification of property for taxation, which reads:

"Unless specially restrained from so doing by the constitution itself, it is competent for the Legislature to arrange and divide the various subjects of taxation into distinct classes and to impose taxation at different rates on the several classes; this does not violate the requirement of equality and uniformity, provided the tax is uniform upon all members of the same class, and provided the classification is made on a fair and reasonable system based on

Classification of Property.

grounds of public policy or on some natural and substantial difference of situation or circumstances; but a classification cannot be sustained which is arbitrary, invidious, or unreasonable, and the tax must be equal and uniform as to the class upon which it operates.''

The learned writer of the brief overlooked the very first line of the foregoing, when he urges that there can be classification of property in Missouri. Section 4 of Article X of our Constitution, which requires all property to be taxed in proportion to value, is a constitutional inhibition against classification, recognized in the quotation, supra. Had the learned author of this brief turned the pages of 37 Cyc. until he reached page 760, he would have found the rule applicable to Missouri, owing to our peculiar constitutional provisions. That rule reads:

''A constitutional requirement that all property shall be taxed in proportion or according to its value is mandatory upon the Legislature, and imposes a rule for its assessment which cannot be varied, as to such taxes as are within the application of the provision. In particular, it forbids the levy of specific taxes and requires that they shall be imposed *ad valorem*. Such a provision is also generally taken as prohibiting the commutation of taxes, in so far as that is involved in imposing a fixed charge on receipts, amount of business, or output in lieu of all taxes on property owned, *and as prohibiting a classification of property and taxation of the different classes at different rates.*''

Whether or not there is legislative authority to classify property is dependent upon the peculiar constitutional provisions of the state. In Georgia the constitutional provision reads: ''All taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.''

It will be noted that this covers both Sections 3 and 4 of our Article X. The clause ''and *ad valorem* on all

property subject to be taxed" is in effect our Section 4, Article X. In the case of Major v. Weed, 84 Ga. 1. c. 685, is a full discussion of their constitution. That court rules that the words "class of subjects" as used in their constitution had reference to the divers subjects which might be taxed, and that property was one of those subjects. That as to other subjects of taxation, there might be classification, but as to property there could be no classification, because the constitution had placed it in a single class, and in a class to itself. The language of that court is so forceful, and so appropriate here, that we quote the following:

"The legislative or municipal authorities are not bound to tax any occupation or business within their territorial limits, but when they undertake to tax one class of business or occupation, the same tax must be levied on all members of that class. We think the plain meaning of this clause of the constitution is, that the Legislature or municipal authorities may classify all subjects of taxation, and make the tax uniform on each class. They can tax these classes or not as they see proper; they can tax one class and exempt the others; but when they do tax a particular class, the rate must be uniform as to all of that class. When, however, they come to deal with property, a different rule prevails. If property is taxed, all of it must be taxed except that exempted in the constitution. The Legislature or municipal authorities can make no exemption as to property; it must be taxed, and taxed according to its value. Though property is a subject of taxation, *the constitution treats it as but one subject,* and prescribes the rule of uniformity as to it by saying that all of it subject to be taxed shall be taxed *ad valorem.* And if it must be taxed, and taxed according to its value, we cannot *see how it can be classified anew,* and one rate put upon real estate, a lower rate upon personal property generally, and still a lower rate upon shares in banks and banking associations. If one man has a thousand dollars worth of personal property, and another a thousand dollars

worth of real estate, and another a thousand dollars worth of shares in a banking company, it must bear the same rate of taxation. Each must bear the same burden in support of the government which protects the owner and his property.''

So also in Verdrey v. Village of Summerville, 82 Ga. 140, that court said:

''*The only classification of property, relatively to taxation, that is made or authorized, is into exempt property and property subject to be taxed; and taxation on all property subject to be taxed is required to be ad valorem that is, according to value.*

''Once for all, the Constitution has enumerated two classes of property, which enumeration the Legislature, the courts and the citizens must recognize as exhaustive; property, whatever its species, is simply exempt or subject to be taxed. If exempt, it pays nothing; if subject, the amount it shall pay is measured by multiplying the fixed rate into the actual value. The result will be, in every instance, that all persons who own taxable property of equal value will pay the same amount of taxes, and all who own more than others will pay more, and all who own less will pay less.''

The italics are ours. This court in discussing Section 3 of Article 10, for the first time in St. Louis v. Spiegel, 75 Mo. 145, practically took a similar view. The court discussed both Sections 3 and 4.

Our Constitution like the Georgia Constitution classifies property into taxable and exempt property, and there can be no further classification.

We are cited to Trust Co. v. Schramm, 269 Mo. 489; Wire Co. v. Wollbrinck, 275 Mo. l. c. 357; Bond & Ins. Co. v. Chorn, 274 Mo. l. c. 29; Amer. Mfg. Co. v. St. Louis, 270 Mo. 40. These cases, and other similar cases, have no application to the point in issue here. They do not refer to legislative power to classify *property* for the purpose of taxation. The Schramm case simply rules that where the State Board of Equalization has fixed the value of property for taxation, the county or city boards have no power to increase such valuation. The Woll-

brinck case is the Income Tax matter, and that tax was sustained solely upon the theory that it was not a *property* tax. It is true that we said that under Section 3, Article 10, the lawmakers might classify subjects of taxation, but we did not mean to say that the lawmakers could reclassify property, when the Constitution had fixed the class, by Section 4 of Article 10. The Chorn case was dealing with an excise tax. The language of BROWN, C., is plain upon this matter. [274 Mo. l. c. 29.] The American Manufacturing Co. case was a tax upon a privilege, or one coming under the broad view of excise taxes. [270 Mo. l. c. 46.] Such cases are without value in dealing with the question which we have before us, i. e. can the law-making power re-classify property, and levy a different tax upon the different classes?

We rule that the General Assembly can do neither. It cannot re-classify property, for to so do would violate section 4 of Article X. It cannot violate the rule of uniformity, for such would violate Section 3 of Article X. However, the whole matter is disposed of, when we rule as we now do, that the General Assembly is without power, under the Constitution, to divide property into different classes for the purposes of taxation. For these reasons the Act of 1917 is wholly void.

V. This Act of 1917 literally ignores Section 22 of Article X of the Constitution. By this section (an amendment to the Constitution in 1907) the county court in counties not having township organization, and Road & the township board of directors in counties hav-Bridge ing township organization, are authorized to levy Taxes. a tax on all property for road and bridge purposes, up to twenty-five cents on the $100. This law allows the township boards to levy no tax, and limits the counties to ten cents for all purposes in this particular case, and this for the two years time. In other words a constitutional right given to the counties, and to the townships, in counties having township organization, is ruthlessly wiped out by this act.

290 Mo.—6

How many other provisions of the organic law this act violates, we shall not stop to consider. It is a bungling attempt to exempt the property therein named from paying taxes in proportion to its value. Not only so, but it provides for a property tax, without having an assessment or determination of value. It might be urged that the lawmakers fixed the value at the face value of the securities, and that therefore there was an assessed value. In Missouri the lawmakers are without power to assess property. The authorities are not uniform upon the power of a Legislature to assess, but they are in unison on the proposition, that where the Constitution of the state fixes an assessing power, in officers named, then the Legislature is wholly without power. The cases on all phases of the question are collected in a note to the case of Baltimore v. State, 11 Am. & Eng. Ann. Cases, 720. The annotator says:

*Valuation by Legislature.*

"One of the fundamental principles governing the taxing power of the State is that the property of each individual must be taxed in proportion to its value. [27 Am. & Eng. Encyc. Law (2 Ed.) 605, 606.] In order to ascertain such value, a separate assessment of each person's property is usually necessary. [Mackin v. Taylor County Court, 38 W. Va. 338.] Under a constitutional provision requiring such assessments to be made by a designated officer only, it has been held that the Legislature has no power to make assessments. [Republic Ins. Co. v. Pollak, 75 Ill. 292. See also Taxation of Min. Claims, 9 Colo. 635, 21 Pac. 476; Hawkins v. Mangum, 78 Miss. 97, 28 So. 872.] It has also been held that in the absence of such a provision, the Legislature has the power to make assessments, but that the machinery of a legislative body is not adapted for the exercise of such power."

Our Constitution contemplates the determination of the value of property by officers, and not by the Legislature. [Sec. 18, Art. X.] This section creates the State Board of Equalization, and we have often ruled that no assessment of property is complete, until after this body

has acted. In the language of the Constitution: "The duty of said board shall be to adjust and equalize the valuation of real and personal property among the several counties in the State." The point is, that our Constitution contemplates that assessment of values of property shall be made by officers other than the Legislature. The Legislature had no power to fix the value of the securities mentioned in the Act of 1917. The law then provides for a property tax without any lawful assessment or determination of value. We need not go further. The whole act is but a bungling attempt to exempt these securities from the taxes that they should pay.

But it is urged, that with this insignificant tax, this class of property will emerge from its hiding place, and the State will be benefitted thereby. If the penal laws were strengthened, and then enforced, it would require but a few penitentiary sentencs to bring to light all such property for the payment of the taxes at the same rate as other property is required to pay. The act is wrong in principle, and against good morals, and a fair sense of justice. All property should bear its proportionate part of the State's necessities. The Constitution so declares, and such declaration voids this law.

Our writ of mandamus is denied. All concur, except *J. T. Blair, C. J.,* not sitting; *D. E. Blair, J.,* concurs in result.