423 P.2d 337

**IDAHO TELEPHONE COMPANY et al.,**
**Plaintiffs-Appellants,**

v.

**E. D. BAIRD, Charles E. Gossett, T. Hedley**
**Dingle, and T. C. Waddoups, as members of**
**and constituting the Idaho State Tax Com-**
**mission, Defendants-Respondents.**

No. 9909.

Supreme Court of Idaho.

Feb. 2, 1967.

Marcus, Leggat & Marcus, Boise, for appellants.

Allan G. Shepard, Atty. Gen., and Larry D. Ripley, Asst. Atty. Gen., and Givens, Givens & Manweiler, Boise, for respondents.

SMITH, Justice.

Appellants, public utility corporations owning property within the State of Idaho, brought this action pursuant to Idaho Code, Title 10, chap. 312, for a declaratory judgment.

In their complaint appellants alleged that specific provisions of Idaho Session Laws 1965, chap. 312, now incorporated in Idaho Code, Title 63, relating to revenue and taxation, are violative of Idaho's Constitution, as well as the due process and equal protection clauses of the United States Constitution. Appellants further alleged that respondents lack authority to assess appellants' property at a higher ratio of full cash value than applies to other taxable property within the State. Upon the filing of respondents' answer, both appellants and respondents moved for judgment on the pleadings. Certain affidavits having been filed, the trial court considered the motions as motions for summary judgment, I.R.C.P. 12(c), and thereupon entered judgment in favor of respondents. Appellants have appealed from the judgment.

Chapter 312 of the 1965 Session Laws effected a general revision of the ad valorem property tax laws. The purpose of the revision, according to the declaration of legislative intent, was to equalize assessed valuations among the counties, and not to raise additional revenue. I.C. § 63–100. To this end, chapter 312 added I.C. § 63–101A, which provides as follows:

"All property within the jurisdiction of this state for the purpose of assessment and taxation is hereby classified as follows:

Class 1. Real Property,

Class 2. Personal Property, and

Class 3. Operating Property."

Operating property is defined by I.C. § 63–113, as amended by chapter 312, to include: " * * * all franchises, rights of way, roadbeds, tracks, pipe lines, terminals, rolling stock, equipment, power stations, power sites, lands, reservoirs, generating plants and substations, all immovable or movable property operated in connection with any public utility or car company, including the operating property of all railroads, telegraph, telephone, electric current transmission and distribution lines, pipe lines for the transportation of commodities, including water under the jurisdiction of the Idaho Public Utilities Commission, wholly or partly within this state, and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business, and shall include all title and interest in such property, as owner, lessee or otherwise."

I.C. § 63–101B, incorporated into the code by chapter 312, imposes different ratios of assessment against appellants' operating property than prevails in the assessment of Class 1, Real Property, or Class 2, Personal Property. I.C. § 63–101B reads:

"The term 'assessed value' as used in this title shall mean a percentage of 'full cash value' as the latter term is hereinafter defined.

"Class 1, real property, as in this chapter defined, shall be assessed at twenty per cent (20%) of its full cash value.

"Class 2, personal property, as in this chapter defined, shall be assessed at twenty per cent (20%) of its full cash value.

"Class 3, operating property, as in this chapter defined, shall be assessed at forty per cent (40%) of its full cash value."

I.C. §§ 63–100 and 63–2217, also are new enactments by the 1965 legislature contained in chapter 312. I.C. § 63–100 declares the legislative intent underlying the enactment of the chapter. I.C. § 63–2217 provides for adjustment of property tax levies during a two-year transition period, so that property tax revenues shall remain constant during the tax years 1966 and 1967.

Appellants' assignments of error present the issues:

1. Whether I.C. §§ 63–101A and 63–101B as enacted, and 63–113 as amended, by the 1965 legislature, are violative of Idaho Constitution, Art. VII, §§ 2, 3 and 5.

2. Whether I.C. §§ 63–100 and 63–2217, enacted by the 1965 legislature, are violative of Idaho Constitution, Art. VII, § 6.

3. Whether such sections of the statute are violative of the due process and equal protection clauses of the United States Constitution.

4. Whether the classification of operating property of public utility corporations, under I.C. §§ 63–101A, 63–101B and 63–113, is just and reasonable.

Idaho Constitution, Art. VII, § 2, reads as follows:

"Revenue to be provided by taxation.—The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state; also a per capita tax: provided, the legislature may exempt a limited amount of improvements upon land from taxation."

Art. VII, § 3, provides:

"Property to be defined and classified.—The word 'property' as herein used shall 'be defined and classified by law."

Finally, Art. VII, § 5, reads:

"Taxes to be uniform—Exemptions.—All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: provided, that the legislature may allow such exemptions from taxation from time to time as shall seem necessary and just, and all existing exemptions provided by the laws of the territory, shall continue until changed by the legislature of the state: provided further, that duplicate taxation of property for the same purpose during the same year, is hereby prohibited."

█ In considering the question of the constitutionality of an enactment, certain fundamental rules must be borne in mind. The burden of showing the unconstitutionality of a statute is upon the party asserting it, and invalidity must be clearly shown. Caesar v. Williams, 84 Idaho 254, 371 P.2d 241 (1962); Rich v. Williams, 81 Idaho 311, 341 P.2d 432 (1959); Eberle v. Nielson, 78 Idaho 572, 306 P.2d 1083 (1957).

█ This court is without power to invalidate or nullify an enactment of the legislature unless the legislation clearly violates the constitution. Caesar v. Williams, supra; Padgett v. Williams, 82 Idaho 114, 350 P.2d 353 (1960).

█ Every reasonable presumption must be indulged in favor of the constitutionality of an enactment of the legislature. Caesar v. Williams, supra; Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 78 P.2d 105 (1938); Robinson v. Enking, 58 Idaho 24, 69 P.2d 603 (1937).

█ It must be kept in mind that the Constitution of the State of Idaho is not a delegation of power to the legislature but is a limitation on the power it may exercise, and that the legislature has plenary power in all matters for legislation except those prohibited by the constitution. Caesar v. Williams, supra; State ex rel. Rich v. Idaho Power Company, 81 Idaho 487, 346 P.2d 596 (1959); Rich v. Williams, supra; Utah Oil Refining Co. v. Hendrix, 72 Idaho 407, 242 P.2d 124 (1952); Boughton v. Price, 70 Idaho 243, 215 P.2d 286 (1950); McGoldrick Lbr. Co. v. Benewah Co., 54 Idaho 704, 35 P.2d 659 (1934); Koelsch v. Girard, 54 Idaho 452, 33 P.2d 816 (1934); Lloyd Corporation v. Bannock County, 53 Idaho 478, 25 P.2d 217 (1933); State ex rel. Macey v. Johnson, 50 Idaho 363, 296 P. 588 (1931); State v. Nelson, 36 Idaho 713, 213 P. 358 (1923); Achenbach v. Kincaid, 25 Idaho 768, 140 P. 529 (1914); St. Joe Improvement Co. v. Laumierster, 19 Idaho 66, 112 P. 683 (1910).

█ "A statute cannot declare a public policy contrary to the Constitution." Boise–Payette Lumber Co. v. Challis Independent School Dist. No. 1, 46 Idaho 403, 408, 268 P. 26, 27 (1928). Any such declaration of policy is restricted by the limitations of the

constitution. State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1007, 1016, 75 A.L.R.2d 408 (1958). See also State ex rel. Rich v. Idaho Power Co., supra.

■ The court must identify a specific prohibition in the constitution before it may justifiably declare a legislative enactment unconstitutional. Independent School Dist., etc. v. Pfost, 51 Idaho 240, 4 P.2d 893, 84 A.L.R. 820 (1931); Idaho Power & Light Company v. Blomquist, 26 Idaho 222, 141 P. 1083 (1914); Achenbach v. Kincaid, supra.

■ In determining the constitutionality of a statute, the court may properly consider the proceedings of the Constitutional Convention so as to interpret the applicable provisions of the Constitution as nearly as possible in a manner consonant with the objects and purposes contemplated by the framers of the Constitution at the time of its adoption. Oneida County Fair Board v. Smylie, 86 Idaho 341, 386 P.2d 374 (1963); see also State v. Village of Garden City, 74 Idaho 513, 265 P.2d 328 (1953); Higer v. Hansen, 67 Idaho 45, 170 P.2d 411 (1946); Wright v. Callahan, 61 Idaho 167, 99 P.2d 961 (1940); Williams v. Baldridge, 48 Idaho 618, 284 P. 203 (1930); Fralick v. Guyer, 36 Idaho 648, 213 P. 337 (1923).

■ Idaho Constitution, Art. VII, §§ 2, 3 and 5, inasmuch as they relate to the same matter or subject, i.e., revenue and taxation, must be construed *in pari materia*.

Appellants' principal argument is that the Idaho Constitution, Art. VII, relating to finance and revenue, dictates a uniform rule for property taxation within jurisdictions levying the tax.

■ A constitutional rule of uniform ad valorem taxation forbids legislative classifications of property for the purpose of imposing a greater burden of ad valorem taxation on one class than on another; that is, all property not exempt from taxation must be assessed at a uniform percentage of actual cash value, and a single fixed rate of taxation must apply against all taxable property. See 1 Cooley, Taxation, §§ 298 and 299 (4th ed. 1924).

■ We interpret the language of Art. VII, § 2—"every person * * * shall pay a tax in proportion to the value of his, her, or its property * * *"—as meaning that every property owner shall receive equal treatment under the ad valorem tax laws; for example, if owner A possesses $100.00 of property which is taxed $1.00, then owner B with $400.00 of taxable property shall be taxed in the same proportion, or $4.00. The constitutional requirement may not be evaded by disparate rates of assessment between A and B, or by imposition of different tax rates against A's and B's properties. The language of section 2, as thus construed, "is a reasonably clear statement in express terms of the rule of uniformity * * *. It cannot be open to argument that a provision of this character does not admit of classification of property for the purpose of taxation. The meaning is too plain to admit of doubt." Hilger v. Moore, 56 Mont. 146, 164, 182 P. 477, 479 (1919). Accord, 1 Cooley, Taxation, § 253 (4th ed. 1924).

■ This court has previously held that the requirement of Art. VII, § 2, of uniform ad valorem taxation, is violated when one class of property is systematically assessed at a higher percentage of actual cash value, thereby subjecting the taxpayer to a higher rate of taxation, than applies to other property within the taxing jurisdiction. Boise Community Hotel, Inc. v. Board of Equalization, 87 Idaho 152, 391 P.2d 840 (1964); Chastain's, Inc. v. State Tax Commission, 72 Idaho 344, 241 P.2d 167 (1952); Anderson's Red & White Store v. Kootenai County, 70 Idaho 260, 215 P.2d 815 (1950).

The language of Art. VII, § 2, requiring property taxation to be proportionate to the value of the property taxed appears in the constitutions of several other jurisdictions. The Constitution of New Hampshire, Article Fifth, Part Second, requires "proportional and reasonable assessments, rates, and taxes." The New Hampshire Supreme

Court has held that such language compels uniform and equal property taxation. Opinion of the Justices, 99 N.H. 532, 114 A. 2d 327 (1955); Bemis Bros. Co. v. City of Claremont, 98 N.H. 446, 102 A.2d 512 (1954). California's Constitution, Article XIII, Section 1, provides that "All property in this State * * * shall be taxed in proportion to its value * * *." California's Supreme Court regards that language as compelling an equal and uniform taxation of all property in the state. Rode v. Siebe, 119 Cal. 518, 51 P. 869, 39 L.R.A. 342 (1898); Fatjo v. Pfister, 117 Cal. 83, 48 P. 1012 (1897); Cottle v. Spitzer, 65 Cal. 456, 4 P. 435 (1884); Crothers v. County of Santa Cruz, 151 Cal.App.2d 219, 311 P.2d 557 (1957); 46 Cal.Jur.2d, Taxation, § 107.

The proportionality requirements in the 1875 Missouri Constitution, Art. X, § 4; the Illinois Constitution, Art. IX, § 1, S. H.A., and the Massachusetts Constitution, pt. 2, Chapter 1, Article 4, have similarly been construed as imposing a uniform rule of taxation upon the taxing authorities. See Law v. People ex rel. Huck, 87 Ill. 385, 404 (1877) (concurring opinion); Chicago & N. W. Ry. Co. v. Board of Sup'rs of Boone County, 44 Ill. 240 (1867); Board of Sup'rs of Bureau County v. Chicago B. & Q. R. Co., 44 Ill. 229 (1867); Bettigole v. Assessors of Springfield, 343 Mass. 223, 178 N.E.2d 10 (1961); Connecticut Mut. L. Ins. Co. v. Commonwealth, 133 Mass. 161 (1882); Boonville Nat. Bank v. Schlotzhauer, 317 Mo. 1298, 298 S.W. 732, 55 A.L.R. 489 (1927); State ex rel. Tompkins v. Shipman, 290 Mo. 65, 234 S.W. 60 (1921).

Our interpretation of the provisions of Idaho Constitution, Art. VII, § 2, is manifestly supported by reference to the debates at the 1889 Idaho Constitutional Convention. The delegates to that Convention argued at length as to the wisdom of exempting certain properties from ad valorem taxation by constitutional fiat. It was unanimously assumed that properties not wholly exempt would be subject to taxation on an equal basis with all other taxable property. One delegate, Frank Harris, remarked that church property should not be exempted under the constitution, so "that every class of property may be made to pay its equal proportion of state expenses." II Idaho Constitutional Convention 1706 (1912). Delegates James M. Shoup and A. F. Parker criticized exemptions of mining property as "undemocratic" and contrary to the "true theory of taxation." Id. at 1713. Delegate Parker argued before the Convention:

"[U]nequal taxation is unjust taxation, and when you tax me and let my neighbor go free you do me an injustice. What we want in this country is equal and exact justice to all, and we want it incorporated into this article on revenue and finance * * *, so that there will be no exemptions whatever." Id. at 1714.

The tenor of the entire discussion over provisions of Article VII, relating to finance and revenue, clearly indicates that the Framers of Idaho's Constitution intended only two alternatives: either that property would be subject to one uniform non-discriminatory rate of assessment and taxation or, that it would be entirely exempt from the burden of ad valorem taxation. See generally, id. at 1639–1775. As unequivocally expressed by Delegate W. B. Heyburn: "[W]e have declared that all taxation shall be uniform." Id. at 1736.

Respondents would concede *arguendo* that Art. VII, § 2 states the rule of uniformity as to ad valorem taxes, but contend that the clause "except as in this article hereinafter otherwise provided" permits an exception for discriminatory classifications under Sections 3 and 5. That argument assumes that the Framers, having stated such an overriding rule of uniformity, next proceeded to make an exception which completely negates the prior rule. Common sense refutes any fiction that the Convention intended to destroy ab initio its own constitutional mandate. Moreover, the Convention indicated its intention that the rule of uniformity expressed in section 2,

admitted of exception only in the case of exemptions as promulgated by the legislature under sections 2 and 5, or exemptions previously existing under the territorial laws. II Idaho Constitutional Convention at 1641, 1646.

Respondents present persuasive arguments that Art. VII, §§ 3 and 5, of the constitution permit classification such as exists under the statutes challenged by appellants. Art. VII, § 3, providing that "property" shall be classified by law, lends prima facie support to respondents' contention. Classification of property, however, may be effected for a variety of purposes; classification for one purpose may contravene the rule of uniform ad valorem taxation, while another classification scheme does not. For example, even in jurisdictions where the rule of uniformity is acknowledged to prevail, the legislatures or state tax commissions may promulgate reasonable classifications so as to provide different methods for determining the true value of disparate species of property. The overriding rule of uniformity does not preclude classification for such purposes, since the end of uniformity is promoted by applying sophisticated valuation methods to distinctive classes of property. To demand absolute uniformity in methods of valuation would defeat the prior, supreme requirement of equality and uniformity. The constitutional mandate is satisfied if the methods are not obviously designed to produce discriminatory burdens upon different classes of property. People ex rel. Iron Silver Mining Co. v. Henderson, 12 Colo. 369, 375, 21 P. 144, 146 (1888); Accord, San Francisco & N. P. R. R. Co. v. State Board, 60 Cal. 12 (1882); Puget Sound Power & Light Co. v. City of Seattle, 117 Wash. 351, 201 P. 449, 207 P. 689 (1921); Chicago & N. W. Ry. Co. v. State, 128 Wis. 553, 108 N.W. 557 (1906); 1 Cooley, Taxation, §§ 295 and 299 (4th ed. 1924). Contra, County of Santa Clara v. Southern Pac. R. Co., 18 F. 385 (D.Cal.1883); The Railroad Tax Cases, 13 F. 722 (D.Cal.1882); Exchange Bank of Columbus v. Hines, 3 Ohio St. 1 (1853).

Art. VII, § 3, therefore, affirms the power of the state legislature to make reasonable classifications of property for certain purposes. However, the exercise of that power is bounded by the constitutional requirement of uniformity embodied in Art. VII, § 2.

Respondents contend that Art. VII, § 5, implicitly authorizes the state legislature to classify property and to impose differing rates of assessments and levies against the various classes defined by law. Section 5 requires that all taxes be uniform upon the same class of subjects and that taxes be levied and collected under general laws prescribing regulations for a just valuation of all property. This court has repeatedly held that the uniformity clause of section 5 does not apply to excise or poll taxes. John Hancock Mut. L. Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359 (1948); State ex rel. Anderson v. Rayner, 60 Idaho 706, 96 P.2d 244 (1939); United Pac. Ins. Co. v. Bakes, 57 Idaho 537, 67 P. 2d 1024 (1937); J. C. Penney Co. v. Diefendorf, 54 Idaho 374, 32 P.2d 784 (1934); In re Kessler, 26 Idaho 764, 146 P. 113, L.R.A. 1915D, 322 (1915). Since all taxes are categorized as either (1) capitation or poll taxes; (2) excise taxes, or (3) taxes on property, Diefendorf v. Gallett, 51 Idaho 619, 633, 10 P.2d 307, 312; 1 Cooley, Taxation § 38 (4th ed. 1924), those holdings necessarily limit the application of Art. VII, § 5 to property taxes exclusively. Respondents proceed to argue, on the basis of this interpretation, that the phrase "class of subjects" entails a plurality of property classifications, and that section 5 only requires uniformity within each class, so that no particular parcel is subjected to higher rates of assessment or taxation. In that regard, the uniformity clause of Art. VII, § 5, of the Constitution, as well as the due process clause of the United States Constitution, prohibits the singling out of one taxpayer's property for more burdensome taxation than applies to like property within

the taxing jurisdiction. Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Sunday Lake Iron Co. v. Wakefield Township, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); In re Farmer's Appeal, 80 Idaho 72, 325 P.2d 278 (1958); McGoldrick Lbr. Co. v. Benewah County, supra; Washington County v. First Nat. Bank, 35 Idaho 438, 206 P. 1054 (1922).

However, respondents further contend if section 5 contemplates classes of property, and only requires that property taxes be uniform within each class, then it follows that the legislature may prescribe disparate rates of assessment or taxation between the several distinct classes of property. In those jurisdictions where the constitutional phraseology—"taxes shall be uniform upon the same class of subjects"—stands unqualified by any other constitutional restraint against unequal taxation, respondents' argument is demonstrably correct. The Pennsylvania Constitution, Art. IX, § 1, P.S., for example, embodies a uniformity clause identical to that of Idaho Constitution, Art. VII, § 5, except that the Pennsylvania clause is not secondary to any rule of uniformity. The Pennsylvania Supreme Court has accordingly upheld classification for purposes of discriminatory assessments of property. City of Williamsport v. Brown, 84 Pa. 438 (1877); Roup's Case, 81½ Pa. 211 (1876).

The Delaware Constitution, Art. VIII, § 1, Del.C.Ann., also requires that taxes be "uniform upon the same class of subjects," without further restriction upon assessment and taxation. The Delaware courts have consistently upheld discriminatory classifications of property. Philadelphia, B. & W. R. Co. v. Mayor & City Council, 30 Del.Ch. 213, 57 A.2d 759 (1948); State v. Pinder, 30 Del. 416, 108 A. 43 (1919). See also Mont.Const., Art. XII, § 11; Yellowstone Pipe Line Co. v. State Bd. of Equalization, 138 Mont. 603, 358 P.2d 55 (1960); Hilger v. Moore, supra.

Respondents observe that the uniformity clause of Art. VII, § 5 of the Idaho Con-stitution, is worded identically with Art. X, § 3, of Colorado's 1876 Constitution. Indeed, the Idaho Framers deliberately patterned portions of Article VII, relating to finance and revenue, upon corresponding provisions of the Colorado Constitution. II Idaho Constitutional Convention, 1656–57, 1722–23. For that reason, respondents contend that this court should adopt the construction placed upon the uniformity clause by the Colorado courts. See In re Schriber, 19 Idaho 531, 114 P. 29, 37 L.R.A.,N.S., 693 (1911); Stein v. Morrison, 9 Idaho 426, 75 P. 246 (1904). Respondents interpret the Colorado Supreme Court decisions as upholding discriminatory classifications of property under Colorado's Constitution.

We cannot agree with that contention. First, the Colorado Constitution contains no clause, comparable to Article VII, § 2, of the Idaho Constitution, restricting the imposition of property taxes. This substantial difference in itself sufficiently distinguishes the line of Colorado cases decided under the uniformity clause. Second, even if the Colorado decisions were pertinent to this discussion, no Colorado case has squarely held that Colorado's legislature may classify property for the purpose of imposing unequal or discriminatory rates of assessment or taxation. The leading case of People ex rel. Iron Silver Mining Co. v. Henderson, supra, cited by respondents, involved a classification of mining property into two classes: (1) those producing in excess of $1,000 per annum, and (2) all other mines. The first class was assessed for ad valorem tax purposes at one-fifth of the mine's gross proceeds, while all other mines were valued as ordinary property. The same rate of taxation applied to all property uniformly throughout the taxing district. The Henderson case fails to present any issue of discriminatory taxation, because a classification for purposes of providing specialized methods for ascertaining the true value of types of property does not infringe upon a constitutional rule of uniform ad valorem taxation. In Foster v. Hart Consol. Min.

Co., 52 Colo. 459, 122 P. 48 (1912), the Colorado Supreme Court again approved classification as to method of valuation, in these terms:

"So long as classification is based upon the nature of the property justifying it, there is nothing to forbid legislative classification for purpose of taxation or to prevent the fixing of valuation of different classes by different methods, *provided that* by the method prescribed for a particular class of property the burden of taxation is uniformly imposed upon that class, is just and equitable, *and does not exempt it from bearing its fair proportion of the burden of taxation, as compared with other classes of property.*" 52 Colo. at 471, 122 P. at 52 (emphasis supplied).

See also Citizens Committee for Fair Property Tax v. Warner, 127 Colo. 121, 254 P. 2d 1005 (1953); Ames v. People ex rel. Temple, 26 Colo. 83, 56 P. 656 (1899); Matter of Constitutionality of House and Senate Bills, 9 Colo. 635, 21 P. 476 (1886). Finally, we note that the people of Colorado deemed it expedient in 1956, to amend Art. X, § 3 of their 1876 Constitution, so as expressly to provide for property classifications, as follows: "All taxes shall be uniform upon each of the various classes of real and personal property located within the territorial limits of the authority levying the tax * * *." Idaho has not adopted a similar amendment.

Respondents' arguments place undue emphasis upon the permissive implications of Idaho's Constitution, Art. VII, § 5, without adequate reference to the additional restraints imposed by the rule of uniform ad valorem taxation in Article VII, § 2. It is not uncommon for a state's constitution to require that taxes be "uniform on the same class of subjects," and to impose a further requirement that ad valorem taxation shall be uniform throughout the jurisdictions levying the tax.

Art. X, § 3, of the Missouri Constitution, for example, provides as follows:

"Taxes may be levied and collected for public purposes only, and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. All taxes shall be levied and collected by general laws".

But the taxation of property in Missouri was further limited in Art. X, § 4, of the 1875 Missouri Constitution, which provides that "All property subject to taxation shall be taxed in proportion to its value." The Missouri Supreme Court has ruled that section 4 imposed a rule of uniformity in the taxation of all property. Boonville Nat. Bank v. Schlotzhauer, supra; State ex rel. Tompkins v. Shipman, supra.

The Georgia Constitution, prior to the amendments of 1937, stated that:

"All taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Article VII, Section 2, Paragraph 1.

The Georgia Supreme Court held in Mayor and Alderman etc. v. Weed, 84 Ga. 683, 11 S.E. 235, 8 L.R.A. 270 (1890), that the ad valorem clause distinguished Georgia's Constitution from Pennsylvania's, so that there could be no classification of property for purposes of imposing different rates of taxation. Accord, Featherstone v. Norman, 170 Ga. 370, 153 S.E. 58, 70 A.L. R. 449 (1930).

Respondents attempt to distinguish numerous cases decided under the Idaho Constitution and code holding that the constitutional requirements of uniformity proscribe systematic discrimination, either through undervaluation or overvaluation of one property or class of property as compared to other property. See Washington Water Power Co. v. Kootenai County, 270 F. 369 (9th Cir. 1921); Boise Community Hotel, Inc. v. Board of Equalization, supra; In re Farmer's Appeal, supra; Chastain's, Inc. v. State Tax Commission, supra; Anderson's Red & White Store v. Kootenai

County, supra; Washington County v. First Nat. Bank, supra. Respondents contend that those cases held the rule of uniformity to be applicable to the taxation of all property only because, at the time the cases were decided, Idaho law provided for but one class of property. The statute purportedly classifying property, S.L.1913, Ch. 58, Art. I, § 2, provided: "All real and personal property subject to assessment and taxation must be assessed at its full cash value * * *." There is no reliable language in the cited cases indicating that the rule of uniformity embodied in Article VII, sec. 2, was qualified by any legislative power to promulgate discriminatory classifications. The correct rule, as stated in In re Farmer's Appeal, is that the statute cited by respondents,

"which provides that real and personal property subject to assessment for tax purposes must be assessed at its full cash value, is subject to limitations that the values fixed for taxation purposes must be uniform. Where a percentage standard of actual cash value is used to determine the assessed value, such standard should be applied to all property assessed." 80 Idaho at 78, 325 P.2d at 281.

Respondents attempt to support their argument by language in Anderson's Red & White Store v. Kootenai County, supra. In that case, this court dealt with the question whether store merchandise could be assessed at twenty percent of actual cash value, when all other property within the taxing jurisdiction was assessed at ten percent of its actual cash value. The court first quoted Art. VII, §§ 2 and 5 of the constitution, as stating the constitutional requirements pertaining to ad valorem taxation, and then stated:

"These restrictive provisions do not apply to license or excise taxes. [citing cases] *These decisions recognize the authority of the legislature, to make reasonable classifications of property for purposes of taxation to exempt property from taxa-tion, and even to discriminate between classes of property or business.* Diefendorf v. Gallett, supra; J. C. Penney Co. v. Diefendorf, supra. * * * It is noted also that, in the above cases, the court was dealing with license or excise taxes. "The assessments involved here are for ad valorem 'property' tax purposes, and are therefore required to be made uniform with, and upon the same basis of valuation as, other property in the county." 70 Idaho at 263, 215 P.2d at 816. (emphasis supplied)

Respondents contend that the emphasized language expressly lends judicial approval to legislative classifications for the purpose of discriminatory ad valorem taxation. However, in the context of that case, it it obvious that the court was distinguishing between excise taxes and ad valorem property taxes, that the emphasized language applied solely to excise taxation, and that ad valorem property taxes were required to be uniform upon all property, not exempt, within the jurisdiction levying the tax. This view is supported by the cited cases dealing with excise taxes, as well as the holding in the principal case, Anderson's Red & White Store v. Kootenai County, supra.

Inasmuch as the rule of uniform ad valorem taxation prevails under the constitutional mandate of Idaho Constitution, Art. VII, §§ 2 and 5, we are constrained to hold that Idaho Session Laws 1965, chap. 312, § 4, codified as I.C. § 63–101B, purporting to classify operating property for the purpose of imposing a higher ratio of assessment against such classification of property, than prevails against other classes of property, violates that constitutional requirement of uniformity. Under this view of the case, we deem it unnecessary to dispose of appellants' further assignments of error relating to the reasonableness of the classifications of property for purposes of taxation; or the constitutionality

of I.C. § 63–2217, providing for adjustment of property taxes to stabilize revenues.

Respondents lack authority to assess appellants' property at a higher ratio of full cash value than applies to other taxable property in this State; the assessment of appellants' property should be reduced accordingly. Northern Pac. Ry. Co. v. Clearwater County, 26 Idaho 455, 144 P. 1 (1914); Washington County v. First Nat. Bank, supra.

The judgment is reversed as to I.C. § 63–101B, in view of our holding herein that the imposition of a higher rate of assessment against property in Class 3 than is imposed against properties in Classes 1 and 2 violates Art. VII, §§ 2 and 5, of the Idaho Constitution.

McQUADE, McFADDEN, SPEAR, JJ., and ANDERSON, D. J., concur.